#23737, #23738-aff in pt & rev in pt & rem-SLZ-RWS

**2006 SD 7**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| LEWIS & CLARK RURAL WATER SYSTEM, INC., a South Dakota Non-Profit Corporation, | Plaintiff and Appellant, |
| v. | |
| LOREN SEEBA; KENNETH F. SEEBA and LORETTA M. SEEBA; IRVING GEDSTAD and HENRIETTA GEDSTAD; and THE UNITED STATES OF AMERICA, | Defendants and Appellees. |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| LEWIS & CLARK RURAL WATER SYSTEM, INC., a South Dakota Non-Profit Corporation, | Plaintiff and Appellant, |
| v. | |
| GARY D. BUSE and DEE ANNA BUSE, HOME FEDERAL BANK; LINCOLN COUNTY, SOUTH DAKOTA; SOUTH LINCOLN COUNTY RURAL WATER SYSTEM, INC.; and EVELYN BUSE and WILMER BUSE, | Defendants and Appellees. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE BRADLEY G. ZELL
Judge
\* \* \* \*

ARGUED OCTOBER 4, 2005

OPINION FILED **1/20/06**

MARK F. MARSHALL
MONTE R. WALZ of
Davenport, Evans, Hurwitz
  & Smith
Sioux Falls, South Dakota                        Attorneys for appellants.


MARK V. MEIERHENRY
PATRICK J. GLOVER of
Danforth & Meierhenry, LLP
Sioux Falls, South Dakota                        Attorneys for appellees.

**[¶1.]** **Justice STEVEN L. ZINTER delivers the opinion of the Court**

**on:**

> **Issue 1, which holds that the 250 foot setback restriction in SDCL 46-8-1.2 applies to routes acquired under the provisions of SDCL ch 46-8, including routes for water pipelines;**
>
> **Issue 2(a), which holds that the width of the route is measured from the outside dimension of the pipeline rather than the exterior boundary of the easement;**
>
> **Issue 2(b), which holds that "other buildings on the premises" include grain bins and sheds located on the same farmstead as the dwelling house;**
>
> **Issue 2(c), which holds that the route proposed by Lewis & Clark may not cross below, on, or through any existing noncommercial orchard or garden;**
>
> **Issue 2(d)(i), which holds that a landowner, who has no dwelling, building, orchard or garden within the prohibited proximity of the pipeline, lacks standing to assert a condition of SDCL 46-8-1.2;**
>
> **Issue 2(e), which holds that a landowner, who has actual knowledge of the intended pipeline route, cannot construct a dwelling house, building, or noncommercial orchard or garden to block or alter construction of the intended pipeline; and**
>
> **Issue 2(f), which holds that SDCL 46-8-1.1 only governs general pipeline parameters not addressed in SDCL 46-8-1.2, and that the circuit court may not modify the specific conditions in SDCL 46-8-1.2 through SDCL 46-8-1.1.**

**[¶2.]** **Justice RICHARD W. SABERS delivers the opinion of the Court**

**on:**

> **Issue 2(d)(ii), which holds that SDCL 46-8-1.2 does not give a landowner the right to object to a pipeline located on someone else's property.**

**[¶3.]        ZINTER, Justice, writing the opinion on Issues 1, 2(a), (b), (c), (d)(i), (e) and (f).**

[¶4.]        Lewis & Clark Rural Water System, Inc. appeals from the circuit court's interpretation of a statute that regulates the use of eminent domain. Lewis & Clark contends that the statute does not apply to its underground water pipeline project. If the statute does apply, Lewis & Clark challenges the circuit court's interpretation of the statute's restrictions as the pipeline passes dwellings, buildings, and noncommercial orchards and gardens. We affirm the circuit court in part, reverse in part, and remand.

### Facts and Procedural History

[¶5.]        Lewis & Clark was created by an act of Congress to plan, develop, construct, and operate a water pipeline system. The system will pump water from aquifers located near the Missouri River and transport the water to municipalities and rural water systems. It will provide potable water for approximately 200,000 people in eastern South Dakota, northwest Iowa, and southwest Minnesota. The water will be distributed through approximately 337 miles of pipeline across an area of 5,000 square miles, crossing approximately 700-850 parcels of property. Approximately 189 miles of pipeline and 350-475 of those parcels are located in South Dakota.

[¶6.]        In order to construct and maintain the pipeline, Lewis & Clark sought seventy foot permanent easements and eighty foot temporary construction

easements from landowners along the proposed pipeline route.[1]  Because some

easements could not be negotiated, Lewis & Clark filed condemnation actions

invoking the right of eminent domain for waterworks under SDCL 46-8-1.  That

statute provides:

> Any person may exercise the right of eminent domain in the
> manner provided by law to acquire as a public use any property
> or other rights necessary for application of water to beneficial
> uses or to enlarge an existing structure for conveyance of water
> for use in common with an existing or former owner.
> Application of water to beneficial use is a public use, in the
> public interest and of benefit to the public.

Landowners, however, argued that Lewis & Clark was not entitled to use eminent

domain because the pipeline route did not meet a 250 foot setback restriction in

SDCL 46-8-1.2.  That statute provides:

> No routes acquired under the provisions of this chapter may be
> located within two hundred fifty feet of a dwelling house or other
> buildings on the premises or across any noncommercial orchard
> or garden without written consent of the owner.  This section
> does not apply to works located in public rights-of-way.

[¶7.]       These appeals involve three separate properties.  The first property,

parcel 170, is owned by Loren Seeba, et al. (Seeba).  The pipeline route proposes to

run on the Seeba property for a certain distance, cross a public road to property not

owned by Seeba, and then re-cross the road to again run on the Seeba property.

Seeba objected to the proposed location of the pipeline at the point where it would

be across the road on another's property but approximately 140 feet from Seeba's

dwelling.  Seeba contended that eminent domain could not be utilized because the

---

1.      At the time of this appeal, Lewis & Clark had obtained easements on
        approximately seventy properties in South Dakota.

pipeline route was within the 250 foot restriction in SDCL 46-8-1.2. Lewis & Clark responded that Seeba did not have standing to object because Seeba did not own the real property through which the pipeline would run when it was within 250 feet of his dwelling.

[¶8.]     The second property, parcel 180, is owned by Gary Buse, et al. (Buse). The pipeline proposes to run across the Buse property and will come within 250 feet of two types of buildings that are on his property. The first type is a group of three grain bins. The pipeline is proposed to be located approximately twenty-five feet from the grain bins, and a portion of one of the bins is within the permanent easement. The second type of building is a machine shed that was constructed after the scope of the project and intended route became public. The pipeline is proposed to be located approximately seventy feet from this shed and a portion of it is within the permanent easement.

[¶9.]     Buse asserted that the pipeline route violated the 250 foot setback restriction with respect to both types of buildings. Lewis & Clark responded that these buildings did not violate the setback restriction because they were not "other buildings on the premises" within the meaning of SDCL 46-8-1.2. Additionally, Lewis & Clark contended that the setback restriction was inapplicable to the shed because it was constructed after the plans for the pipeline became public.

[¶10.]     The third property, parcel 179, is owned by Wilmer Buse, et al. (W. Buse). The pipeline was not proposed to be located within 250 feet of any dwelling house, other building, or noncommercial orchard or garden on his property. However, W. Buse objected to the route's location at a point where it would be

within 250 feet of buildings on adjacent property, parcel 178, owned by Kevin and Cindy Enterprises. W. Buse objected even though the Enterprises consented to the pipeline route and gave an easement on their property. Lewis & Clark contended that W. Buse had no standing to object because the route was neither on property owned by W. Buse nor within 250 feet of any building owned by W. Buse.

[¶11.]     All parties moved for summary judgment, and the circuit court generally ruled in favor of the landowners. Lewis & Clark appeals raising the following issues:

1. Do the SDCL 46-8-1.2 restrictions, including the 250 foot setback, apply to the Lewis & Clark pipeline project?

2. If the SDCL 46-8-1.2 restrictions apply to the project:

   (a) Does the width of the "route" include both the width of the pipeline and the seventy foot permanent easement?

   (b) Does the 250 foot restriction apply to "other buildings on the premises" that are not dwellings, but are used by the owner or occupant in connection with the dwelling?

   (c) Does the statute prohibit the route from physically crossing a noncommercial orchard or garden?

   (d) Does a landowner have standing to object to the condemnation when:

      (i)   the landowner (W. Buse) has no dwelling, building, orchard or garden within 250 feet of the route?

      (ii)  the landowner (Seeba) has a "dwelling house or other building on the premises" located within 250 feet of the pipeline route, but the pipeline is located on the land of a neighbor?

   (e) Does a landowner, who has actual knowledge of the intended route, have the right to subsequently construct a dwelling house, building, or noncommercial orchard or garden and invoke the statutory restrictions?

    (f)   Does the circuit court have authority (under SDCL 46-8-1.1) to modify the 250 foot setback restriction in SDCL 46-8-1.2 if the court finds that the modification will do the "least possible injury to private property, consistent with sound engineering principles and with economic feasibility"?

## Standard of Review

[¶12.] These appeals involve the interpretation of eminent domain statutes. "Statutory interpretation and application are questions of law." Block v. Drake, 2004 SD 72, ¶8, 681 NW2d 460, 463 (citing Steinberg v. State Dep't of Military Affairs, 2000 SD 36, ¶6, 607 NW2d 596, 599). This Court reviews questions of law under the de novo standard with no deference afforded the circuit court's decision. *Id.* (citing City of Deadwood v. Summit, Inc., 2000 SD 29, ¶9, 607 NW2d 22, 25). In performing that review, we interpret statutes "to discover the true intent of the legislature in enacting laws, which is ascertained primarily from the language employed in the statute." Sanford v. Sanford, 2005 SD 34, ¶13, 694 NW2d 283, 287; State v. Myrl & Roy's Paving, Inc., 2004 SD 98, ¶6, 686 NW2d 651, 653. This Court gives "words their plain meaning and effect, and read[s] statutes as a whole, as well as enactments relating to the same subject." *Id.* (citing State v. I-90 Truck Haven Serv., Inc., 2003 SD 51, ¶3, 662 NW2d 288, 290). The intent of a statute is determined from what the Legislature said, rather than what the courts think it should have said. Martinmaas v. Engelmann, 2000 SD 85, ¶49, 612 NW2d 600, 611 (citations omitted).

## Analysis and Decision

*1. Do the Restrictions in SDCL 46-8-1.2 Apply to Water Pipelines?*

[¶13.] Lewis & Clark argues that SDCL 46-8-1.2 does not apply to water pipelines. However, neither the text nor history of the relevant enactments support its argument.

[¶14.] We first observe that the text of SDCL 46-8-1.2 provides "*[n]o routes* acquired under the provisions of *this chapter* may be located within two hundred fifty feet of a dwelling house…"(emphasis added). Because Lewis & Clark seeks to acquire its route under a statute in that chapter (SDCL 46-8-1), the restrictions in SDCL 46-8-1.2 plainly apply.

[¶15.] This conclusion is also supported by the text of SDCL 46-8-1. That statute provides that eminent domain may be utilized "*in the manner provided by law…*" (emphasis added). Because Lewis & Clark is utilizing this statute to condemn private property, it must do so "in the manner provided by law." And, "the manner provided by law" must include the restrictions and conditions in SDCL 46-8-1.2 because these statutes are construed *in pari materia*.

> The object of the rule of [*in*] *pari materia* is to ascertain and carry into effect the intention of the legislature. It proceeds upon the supposition that the several statutes [are] governed by one spirit and policy, and [are] intended to be consistent and harmonious in their several parts and provisions.

MB v. Konenkamp, 523 NW2d 94, 97-98 (SD 1994) (citing State v. Chaney, 261 NW2d 674, 676 (SD 1978)). Statutes must be construed *in pari materia* when "they relate to the same person or thing, to the same class of person or things, or have the same purpose or object." Goetz v. State, 2001 SD 138, ¶26, 636 NW2d 675, 683 (citing 2B Sutherland, *Statutory Construction,* § 51:03 (6th ed 2000)).

[¶16.]	Here, SDCL 46-8-1 and 46-8-1.2 must be read *in pari materia* because they are in the same chapter, they relate to the same thing, and they have the same purpose or object.  In fact, these statutes were reenacted and amended by the same Legislature, at the same time, and in the same bill as a part of a comprehensive water policy revision.  *See* 1983 SD Sess Laws ch 314, §§ 131, 134.  Reading these statutes *in pari materia*, SDCL 46-8-1.2 must be read as a restriction and condition on the general right of eminent domain granted under SDCL 46-8-1.

[¶17.]	The history of these provisions also supports this conclusion.  "It is … an established principle of statutory construction that, where the wording of an act is changed by amendment, it is evidential of an intent that the words shall have a different construction."  South Dakota Subsequent Injury Fund v. Federated Mut. Ins., 2000 SD 11, ¶18, 605 NW2d 166, 170 (citing South Dakota Subsequent Injury Fund v. Casualty, 1999 SD 2, ¶18, 589 NW2d 206, 209-10) (quoting *In re* Dwyer, 49 SD 350, 207 NW 210, 212 (1926)).  Here, amendments to SDCL 46-8-1.2 reflect legislative intent to broaden the statutory restrictions from routes taken for "waterways" to all routes acquired for the application of water for public use, including pipelines.

[¶18.]	The first version of the setback restriction found in SDCL 46-8-1.2 was enacted in 1890 and was codified in 1903, 1919, and 1939.[2]  It was then reenacted

---

2.	1890 SD Sess Laws ch 103, § 2; RPolC 1903, § 2629; RC 1919, § 8273; SDC 1939, § 61.0416.

in 1955 and codified in 1960 and 1967.[3]  Thereafter, it remained unchanged until 1983.  Under the pre-1983 versions, the setback restrictions were limited to a setback from "waterways."  The pre-1983 versions provided "[n]o routes for *waterways* shall be located ... within fifteen rods of the dwelling house or other buildings on the premises or across any orchard or garden, without the written consent of the owner."  *See* SDCL 46-8-2 (1967) (emphasis added).  However, the 1983 amendment broadened the setback restrictions by removing the limitation to "waterways" and broadly stating:  "*[n]o routes* acquired under the provisions of this chapter may be located within two hundred fifty feet of a dwelling house or other buildings on the premises or across any orchard or garden without written consent of the owner."  1983 SD Sess Laws ch 314, § 134 (emphasis added); SDCL 46-8-1.2.  Because the 1983 amendments broadened the restrictions to all routes taken under provisions of SDCL ch 46-8, the restrictions obviously apply to routes for other waterworks such as pipelines.

[¶19.]       Lewis & Clark, however, argues that the removal of the limiting term "waterways" was mere inadvertence, and therefore, the Legislature did not intend to broaden the statutory restrictions.  Lewis & Clark's argument presumes that the 1983 Legislature did not intend a change when it amended the language of SDCL 46-8-1.2.  We cannot, however, presume such inadvertence in legislative amendments.  On the contrary, "[w]hen an amendment is passed, it is presumed the legislature intended to change existing law," *Federated Mut. Ins.,* 2000 SD 11, ¶18,

---

3.     1955 SD Sess Laws ch 431, § 1; SDC Supp 1960, § 61.0416; SDCL 46-8-2 (1967).

605 NW2d at 170, and further, "intended to alter the meaning of the statute to comport with the new terms." Delano v. Petteys, 520 NW2d 606, 609 (SD 1994) (citing John Morrell & Co. v. Dep't of Labor, 460 NW2d 141 (SD 1990)).

[¶20.]     Any doubt about legislative inadvertence is conclusively rebutted by other provisions of the 1983 Act. As previously noted, 1983 SD Sess Laws ch 314, section 134 re-worded today's version of the setback requirement found in SDCL 46-8-1.2. Following that change in section 134, sections 138 and 139 made specific references to the word "pipeline" in enumerating the types of waterworks that were on the minds of the legislators in adopting this comprehensive revision.[4] These specific references to "pipelines" reflect that the Legislature's replacement of the term "waterways" with the broader phrase "no routes acquired" was not inadvertent. On the contrary, the contemporaneous reference to water "pipelines" reflects that the new language was intended to encompass routes for water pipelines.[5] Consequently, we hold that the restrictions in SDCL 46-8-1.2 apply to

---

4.     Section 138 amended SDCL 46-8-6 to now read "[t]he right of eminent domain may not be exercised to allow two or more *pipelines*, canals, ditches or other water conduits to be constructed on lands owned by any person when a single *pipeline*, canal, ditch or other water conduit can feasibly covey the water." 1983 SD Sess Laws ch 314, § 138 (emphasis added).

       Section 139 amended SDCL 46-8-7 to now read "[w]hen the route for any *pipeline*, canal, ditch or other water conduit mentioned in this chapter is located, a correct survey and plat of the route shall be made...." 1983 SD Sess Laws ch 314, § 139 (emphasis added).

5.     The lack of inadvertence is also demonstrated by examining the closely related legislative history of SDCL 46-8-1.1 (previously codified as SDCL 46-8-1), which was first enacted in 1907 and then codified in 1919 and 1939. *See* 1907 SD Sess Laws ch 180, § 3; RC 1919, § 8222; SDC 1939, § 61.0103. It was then reenacted in 1955, codified in 1960 and 1967, and then remained

(continued . . .)

all "routes acquired under the provisions of this chapter," which includes water pipelines.

### 2.      Compliance with the Setback Restriction.

[¶21.]         Landowners have not suggested that Lewis & Clark violated taking conditions in generally locating the pipeline.  Instead, they contend that the taking is void because the route does not comply with the setback restriction in SDCL 46-8-1.2 in a number of respects.

### 2(a)     How is the Setback Measured—What is the Width of the Route?

[¶22.]         SDCL 46-8-1.2 prohibits the "route" acquired from being within 250 feet of dwellings or other buildings on the premises.  In order to apply this setback, we must first determine the width of the route.  SDCL ch 46-8 does not define the term route.  The circuit court concluded that "the word 'routes' ... includes both the pipeline and the permanent easement to be acquired."  Therefore, the circuit court further concluded that the setback should be measured from the exterior boundary

---

(. . . continued)

unchanged until 1983.  *See* 1955 SD Sess Laws ch 430, § 1; SDC Supp 1960, § 61.0156; SDCL 46-8-1 (1967).  Under these pre-1983 versions, the restriction in SDCL 46-8-1.1 was limited to *canal* rights-of-way:  "Any *canal* right of way so acquired shall be so located as to do the least injury to private or public property, consistent with proper and economical engineering construction." SDCL 46-8-1(1967) (emphasis added).  Again, however, the 1983 amendment broadened the restriction by removing the "canal" limitation and broadly stating that:  "*Any* exercise of eminent domain under the provisions of this chapter shall do the least possible injury to private property, consistent with sound engineering principles and with economic feasibility."  1983 SD Sess Laws ch 314, § 132 (emphasis added); SDCL 46-8-1.1.  Thus, this amendment also broadened eminent domain restrictions from "canal right[s] of way" to "any exercise of eminent domain," which clearly includes pipelines.  1983 SD Sess Laws ch 314, § 132.

of the seventy foot permanent easement. Lewis & Clark, however, contends that the word "route" only includes the actual pipeline and that the setback should be measured from the center of the pipeline.

[¶23.] Because "route" is not defined we must determine and give effect to the intention of the Legislature. *Federated Mut. Ins.*, 2000 SD 11, ¶18, 605 NW2d at 170. In making that determination, we consider the nature and purpose of the setback restriction. In this regard, it is notable that textually and historically the statute has imposed the setback from the actual waterwork rather than any associated easement. For example, the earliest version of this statute referred to a setback from the routes for the open "waterways." *See* 1890 SD Sess Laws ch 103, § 2. This reference to a setback from a waterwork of some type has continued to this day. The latest related amendments suggest that by 1983, the Legislature was also concerned about "structure[s]" as well as "pipelines, canals, ditches or other water conduits for the conveyance of water." *See* SDCL 46-8-1; SDCL 46-8-7.

[¶24.] Thus, it is evident that the purpose of the setback restriction was to protect the property owner from the dangers, inconvenience, and loss of property use associated with an actual waterwork. Considering the danger and inconvenience posed by such open waterworks and structures, the 1890 Legislature would have contemplated a setback measurement from the bank of the waterway. There is also nothing to suggest that later Legislatures would have contemplated something different. However, the dangers and inconveniences that arise from waterworks do not arise from the easements that may be incidentally and occasionally used to maintain the waterwork. Therefore, we conclude that the

setback restriction was intended to be measured from the waterwork rather than the easement:  in this case, the outside dimension of the pipeline.[6]

### 2(b)    What are "Other Buildings on the Premises"?

[¶25.]        In examining Buses' grain bins and shed, the circuit court concluded that "other buildings on the premises" meant "any structures which are real property that are used by the owner or occupant of that premises."  Thus, under the circuit court's interpretation "other buildings on the premises" included buildings in and around the farmstead.  Lewis & Clark argues this interpretation is too broad.

---

6.      This conclusion is supported by the terms of the easement taken in this case. Once this pipeline has been constructed, the easement imposes substantially less danger and inconvenience in the easement area because Lewis & Clark must:  1) restore the surface of the construction area to its original contour and character as nearly as practicable; 2) repair or relocate any agricultural drain tiles; 3) replace the topsoil at the top of the backfill over the pipe trench; 4) repair all fences; 5) maintain the pipe trench area as necessary to remedy any problems relating to soil compaction; 6) indemnify and defend the landowners from all claims, actions, liabilities, damages, costs and expenses arising out of or in connection with the presence and activities of Lewis & Clark on the easement; and, 7) pay the landowners reasonable compensation for crop damages and damages to personal property arising out of or in connection with Lewis & Clark's presence and activities on the easement.

Further, after construction is completed, the landowners retain the right to grant other easements, licenses, rights or interests with respect to the easement that do not materially interfere with the easement given to Lewis & Clark.  Specifically, upon completion of construction, landowners retain: 1) the right to cultivate and harvest crops on and the right of access over and across the easement so long as such use does not interfere with Lewis & Clark's rights; and, 2) the right to make improvements (including structures or other objects) and to plant trees and shrubs with permission of Lewis & Clark, which permission shall not be unreasonably withheld.  Thus, it is evident that following construction, the landowners and adjacent property owners will suffer substantially less danger and inconvenience in the seventy foot easement area.

Lewis & Clark points out that the term "building" is defined in SDCL 36-18A-1(5) as "any structures used or intended to support or shelter any occupancy." From this, Lewis & Clark argues that the definition of "other buildings" in SDCL 46-8-1.2 should be construed *in pari materia* with SDCL 36-18A-1(5) so that "other buildings" are limited to occupied structures. We disagree.

[¶26.]     "Statutes are construed *in pari materia* when they relate to the same person or thing, to the same class of person or things, or have the same purpose or object." *Goetz*, 2001 SD 138, ¶26, 636 NW2d at 683 (citing 2B Sutherland, S*tatutory Construction* at § 51:03). However, "[c]haracterization of the object or purpose [of the statute] is more important than characterization of the subject matter in determining whether different statutes are closely related enough to justify interpreting one in light of another." *Id.* Thus, "the adventitious occurrence of like or similar phrases, or even of similar subject matter, in laws enacted for wholly different ends will normally not justify applying the rule." 2B Sutherland, S*tatutory Construction* at § 51:03.

[¶27.]     Here, the statutes that Lewis & Clark seeks to construe *in pari materia* deal with different purposes and objects. SDCL Title 36 deals with the regulation of professions and occupations, whereas SDCL Title 46 deals with water rights and eminent domain. Because the purposes and objects of these statutes are so different, we cannot construe them *in pari materia* to conclude that "other buildings" must be occupied structures.

[¶28.]     Instead, we give the words of SDCL 46-8-1.2 their plain meaning and effect. *See generally Goetz,* 2001 SD 138, ¶16, 636 NW2d at 681. The plain

meaning of the phrase "dwelling house *or other buildings* on the premises" is clear. The Legislature's disjunctive reference to a dwelling house "or other buildings" clearly reveals that it intended that the restriction apply to both occupied dwellings and to "other buildings" *i.e.* unoccupied buildings on the premises. Thus, we agree with the circuit court that other buildings may include structures, whether occupied or not. However, the Legislature required that the other buildings must be "on the premises." This means that there must be some geographical nexus with the dwelling house. Although it would not be necessary that the other building be immediately adjacent to the dwelling, they must have some legitimate use with and proximity to the dwelling house.

[¶29.] In this case, Buses' grain bins and shed are located on the same farmstead as the dwelling house. In addition, the Buses use these buildings for farming purposes associated with the dwelling. Therefore, the grain bins and machine shed are "other buildings on the premises" to which the 250 foot setback applies.[7]

> *2(c)     Crossing a Noncommercial Orchard or Garden.*

[¶30.] The circuit court held that "the statutory phrase 'across any non-commercial orchard or garden' should be given its literal meaning, which is the

---

7.    This holding would not apply to any building. The owner must show that the building has a geographical nexus and legitimate use connected with the premises on which the dwelling house is located. For example, an old, abandoned building on an occupied farmstead would not be considered an "other building on the premises." Similarly, a new building constructed in a field with no nexus to the dwelling would not be considered an "other building on the premises."

route … may not physically cross a non-commercial orchard or garden." Lewis & Clark argues that this application of SDCL 46-8-1.2 would lead to a worst case scenario where a landowner could plant an orchard or garden near or on the proposed pipeline route thereby blocking or altering the route at substantial cost to Lewis & Clark.

[¶31.] This concern is misplaced insofar as it assumes the pipeline may not be *near* an orchard or garden. We note that unlike the restriction for dwellings and other buildings, the restriction for orchards and gardens is not the 250 foot setback. Instead, the latter restriction only prohibits a pipeline from *crossing* an orchard or garden.

[¶32.] However, the facts of these cases do not involve the crossing of a noncommercial orchard or garden. Therefore, the Landowners correctly point out that this issue may not be ripe for adjudication. They suggest that Lewis & Clark is asking for an advisory opinion on the outcome of a hypothetical case.

[¶33.] Generally, "[c]ourts should decide only mature controversies, eschewing advisory opinions and conjectural questions." Meinders v. Weber, 2000 SD 2, ¶39, 604 NW2d 248, 263 (citing Kneip v. Herseth, 87 SD 642, 214 NW2d 93, 96 (1974)). Even if a court has jurisdiction to decide the question, "it should decline to do so if the issue is so premature that the court would have to speculate as to the presence of a real injury." Boever v. South Dakota Board of Accountancy, 526 NW2d 747, 750 (SD 1995) (citing Meadows of West Memphis v. City of West Memphis, 800 F2d 212, 214 (8th Cir 1986)).

[¶34.] However, these rules are not absolute. "Ripeness involves the timing of judicial review and the principle that '[j]udicial machinery should be conserved for problems which are real and present or imminent.'" *Id.* (citing Gottschalk v. Hegg, 228 NW2d 640, 643-44 (SD 1975) (quoting Davis, *Administrative Law Treatise,* § 21.01)). "A matter is sufficiently ripe if the facts indicate imminent conflict." *Id.* (citing *Kneip*, 214 NW2d at 99).

[¶35.] In this case there is an imminent conflict because record evidence indicates that some landowners intend to plant an orchard or garden to obstruct the pipeline. One opponent of the pipeline created a website urging landowners who are opposed to the pipeline to plant gardens. An excerpt from the website, contained in the record, states "[b]y the way, Gurneys, [a garden and seed company], still exists.... If you are thinking about an orchard or garden, I've always had good luck with their offerings." Considering the opposition and imminent conflict, we address the issue presented.

[¶36.] Here, the plain, ordinary, and usual meaning of the phrase "across any noncommercial orchard or garden" is clear. This language leaves no room for interpretation or construction other than expressing what the Legislature clearly said. We agree with the circuit court and hold that the route proposed by Lewis & Clark may not physically cross any existing noncommercial orchard or garden. This includes a crossing below, on, or through the orchard or garden because the easement sought takes property "below, in, *on, through* and under the described parcel of land." Thus, this easement would contemplate a taking in violation of SDCL 46-8-1.2 should the pipeline cross a noncommercial orchard or garden. We

address the planting of an orchard or garden to obstruct the project in paragraphs 57-61 *infra*.

### 2(d)   Landowners Standing to Assert the Setback Restriction.

[¶37.]        Two issues of standing have been presented; does a landowner have standing to object to the taking when:  (i) the pipeline will cross the landowner's real property, but the landowner (W. Buse) has no dwelling or other building within 250 feet of the pipeline; and, (ii) a landowner (Seeba) has a dwelling or other building located within 250 feet of the pipeline, but the pipeline is located on the land of a neighbor.  The circuit court concluded that standing existed in both situations.

[¶38.]        Whether a party has standing is a legal conclusion, which we review under the de novo standard.  H&W Contracting, L.L.C. v. City of Watertown, 2001 SD 107, ¶9, 633 NW2d 167, 171.  In general, standing is established if a party shows "that he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Id.* (citing Agar School Dist. No. 58-1 v. McGee, 527 NW2d 282, 284 (SD 1995) (quoting Parsons v. South Dakota Lottery Comm'n, 504 NW2d 593, 595 (SD 1993))).  Therefore, to have standing these parties must show some actual or threatened injury that is caused by Lewis & Clark's proposed pipeline route.

### (i) Standing of a Landowner (W. Buse) that has no Dwelling, Building, Orchard or Garden near the Pipeline.

[¶39.]        Lewis & Clark contends that W. Buse does not have standing to object to the placement of the pipeline because he owns no dwelling house or other buildings within 250 feet of the pipeline.  The proposed pipeline runs across the W.

Buse property and then onto the adjacent property of Kevin and Cindy Enterprises. While the pipeline is on the W. Buse property, it does not come within 250 feet of any dwelling or other building owned by W. Buse. It is only when the pipeline is on the Enterprises' property that it comes within 250 feet of a building. But at that point, the Enterprises, not W. Buse, own the land and the buildings. And, the Enterprises have consented to an easement for the pipeline to cross their property. Therefore, W. Buse is attempting to assert the statutory setback right that only the Enterprises possess. Under these circumstances, W. Buse is not being threatened with a violation of the statute or any actual or threatened injury as a result of Lewis & Clark's crossing of the Enterprises' property. For that reason, W. Buse lacks standing to assert a violation of the requirements of SDCL 46-8-1.2.[8]

**[¶40.]** **GILBERTSON, Chief Justice, and SABERS, KONENKAMP and VON WALD, Circuit Judge, concur.**

**[¶41.]** **SABERS, Justice, writing for the majority on Issue 2(d)(ii).**

> *(ii)  Standing of a Landowner (Seeba) who has a Dwelling House or other Building Located Within 250 feet of the Pipeline, but at that Point, the Pipeline is on the Land of a Neighbor.*

**[¶42.]** **The owner of a dwelling house or other building located within 250 feet of the proposed pipeline route has no legal claim to object when the pipeline is located on the land of a neighbor.**

---

8.  Although this appears to have been disputed at trial, counsel for W. Buse acknowledged at oral argument that W. Buse lacked standing.

[¶43.]    SDCL Chapter 46-8, Eminent Domain, governs the ability to condemn property for the application of water to a public use. SDCL 46-8-1 *et. seq.* In granting this condemnation right, the Legislature has also provided:

> No routes acquired under the provisions of this chapter may be located within two hundred fifty feet of a dwelling house or other buildings on the premises or across any noncommercial orchard or garden without written consent of the owner. This section does not apply to works located in public rights-of-way.

SDCL 46-8-1.2. The pipeline, as proposed, would be within approximately 140 feet of Seeba's dwelling house and other buildings but located on his neighbor's property. Based on this proximity, Seeba maintains he has a right under SDCL 46-8-1.2 to withhold his consent to the proposed location of the pipeline. We reject this contention and hold that SDCL 46-8-1.2 only extends as far as a landowner's property line.

[¶44.]    Eminent domain is the right to take private property for a public use without the landowner's consent. 1 Nichols on Eminent Domain, §1.11 (3rd ed 1997); 29A CJS 2d *Eminent Domain* § 2 (1992). Seeba is a stranger to any eminent domain proceeding against his neighbor's property. However, under his interpretation of SDCL 46-8-1.2, he claims he would have a right to dictate the location of an easement on his neighbor's land. Without a specific indication otherwise, we will not presume the Legislature intended such a result.

[¶45.]    That is not to say that Seeba could never have a claim against the pipeline company, such as for negligence in the event the pipeline bursts and damages his property. However, in the absence of SDCL 46-8-1.2, which we hold cannot be invoked by Seeba, he points to no authority indicating he has a right to

control the location of the pipeline on the neighboring property. Because a landowner's right to control the location of the pipeline route ends at his property line, we reverse the circuit court on this issue.

[¶46.] **KONENKAMP, Justice, and VON WALD, Circuit Judge, concur.**

[¶47.] **GILBERTSON, Chief Justice, and ZINTER, Justice, dissent.**

[¶48.] ZINTER, Justice (dissenting).

[¶49.] In order to establish standing, Seeba must demonstrate some actual or threatened injury due to Lewis & Clark's proposed route of the pipeline. *See H & W Contracting*, 2001 SD 107, ¶9, 633 NW2d at 171. To analyze this question, it must be remembered that in order to utilize eminent domain, Lewis & Clark must show that its proposed taking complies with all statutory conditions on the exercise of that right. Illinois Cent. R. Co. v. East Sioux Falls Quarry Co., 33 SD 63, 144 NW 724, 726 (1913). Although SDCL 46-8-1 generally authorizes Lewis & Clark to utilize eminent domain, SDCL 46-8-1.2 creates restrictions or conditions on the exercise of that right. SDCL 46-8-1.2 provides that "no routes acquired under the provisions of this chapter may be located within two hundred fifty feet of a dwelling."

[¶50.] In applying such statutory conditions, this Court has emphatically stated that the party exercising the statutory right of eminent domain must establish compliance with all statutory conditions. Our seminal case on this subject provides:

> [I]t devolves upon a party seeking, through delegated power, to exercise the right of eminent domain to show: (1) That such

> party is *within the class* to whom the power has been delegated. (2) That all *conditions precedent* have been complied with. (3) That the purpose for which the property is to be taken is one of the purposes *enumerated in the statute.* (4) That the property is to be taken for a *public use.* (5) That the particular property sought to be taken is *necessary* to the accomplishment of the public purpose intended.

*Illinois Cent. R. Co.,* 144 NW at 726 (emphasis original). And, in determining whether a statutory condition has been satisfied, this Court has further required strict compliance.

> The power of eminent domain being a power which is possessed by [an entity] solely by being delegated to such [entity] by the sovereign power of the state, its existence depends upon a strict compliance with each and every condition prescribed by such sovereign power. (citations omitted).

*Id.*; Ehlers v. Jones, 81 SD 351, 135 NW2d 22, 22 (1965) (stating that "[p]roceedings to take private property by condemnation are special in character and must be conducted in strict accordance with governing statutes"). We finally note that in determining whether a statutory condition has been satisfied, we look to the purpose of the statute. *Illinois Cent. R. Co.* 144 NW at 726.

[¶51.]      As previously noted, the purpose of SDCL 46-8-1.2 is to protect individuals from the danger and inconvenience of having a pipeline located within 250 feet of their dwelling. *See supra* ¶¶23-24. However, *Lewis & Clark proposes* to locate the pipeline approximately 140 feet from Seeba's dwelling. Therefore, Seeba will be subjected to a threatened injury as a result of Lewis & Clark's placement of the pipeline. More importantly, Lewis & Clark's proposed location violates a statutory condition on the exercise of the right of eminent domain. "[C]ondemnation proceedings in which statues have been ignored or with which

there have been no substantial compliance are void." *Ehlers*, 135 NW2d at 22.

Therefore, for both reasons, Seeba has standing to question Lewis & Clark's right to

exercise eminent domain under SDCL ch 46-8.

[¶52.]        Although the Court correctly observes that the proposed route of the

pipeline is physically located on neighboring property, there can be no question that

Lewis & Clark's proposed route will subject Seeba to a threatened injury because

the pipeline will be approximately 140 feet from his dwelling.  Furthermore, SDCL

46-8-1.2 is a condition precedent to the exercise of eminent domain.  Therefore,

Seeba has standing to assert the setback restriction even though the pipeline is not

on his property.  Were that not the case, a pipeline could be located on a neighbor's

property immediately adjacent to the foundation of another property owner's home.

Under the language of the statutes, the Legislature could not have intended such a

result.

[¶53.]        The Court finds no standing because 1) Seeba would be a stranger to

the ultimate condemnation proceeding; and 2) the statute grants no right to

"dictate" or "control" the location of a pipeline easement on another's property.

*Supra* ¶¶44, 45.  However, even if true, these propositions are irrelevant because

SDCL 46-8-1.2 does not purport to permit one landowner to dictate or control the

terms of a taking on another landowner's property.  Rather, as previously noted, the

statute is a restriction and condition precedent to Lewis & Clark's right to utilize

eminent domain.  *See supra* ¶16.  Thus, the proper question is not, as the majority

opinion phrases it, whether Seeba may control the location of the pipeline on

someone else's property.  The proper question, as our cases firmly demonstrate, is

whether Lewis & Clark may exercise eminent domain under SDCL ch 46-8 when *Lewis & Clark proposes to locate* the pipeline in violation of a statutory condition on the exercise of that right.

[¶54.]     Because Lewis and Clark has not established compliance with the 250 foot setback condition for the exercise of eminent domain under SDCL ch 46-8, I would affirm and hold that under SDCL 46-8-1.2, Seeba's proximity to the pipeline provides standing to object to the exercise of eminent domain at that location.

[¶55.]     **GILBERTSON, Chief Justice, joins this dissent.**

[¶56.]     **ZINTER, Justice, writing the opinion on Issues 2(e) and 2(f).**

*2(e)  May a Landowner, Who has Actual Knowledge of the Intended Pipeline Route, Construct a Dwelling House, other Building, or Noncommercial Orchard or Garden to Block or Alter Construction of the Intended Pipeline?*

[¶57.]     The circuit court concluded that:

> A landowner may construct a dwelling house or other building on the premises, or plant a noncommercial garden or orchard, anywhere the owner desires at any time before a condemnation action is completed, and invoke the restrictions contained in SDCL 46-8-1.2, notwithstanding such owner's actual knowledge of the intended pipeline route, or the filing of a public notice or condemnation case declaring the intended pipeline route.

Lewis & Clark contends that the circuit court erred in its ruling on this issue.  We agree with Lewis & Clark.

[¶58.]     The rules of property ownership at the time of taking are relatively well-established in South Dakota.  Article XVII, section 18 of the South Dakota Constitution provides:

> [m]unicipal and other corporations and individuals invested
> with the privilege of taking private property for public use shall
> make just compensation for property taken, injured or
> destroyed, by the construction or enlargement of their works,
> highways, or improvements, which compensation shall be paid
> or secured *before such taking*, injury or destruction.

(emphasis added). This right of compensation does not become vested until the date of the takings decision or the date on which the takings hearing is waived. SDCL 21-35-25. *See also* SDCL 21-35-10.1 (stating that the right to take may be challenged.) Furthermore, the condemning authority gains no right to possession of the property until it pays the full amount of condemnation judgment and costs. City of Sioux Falls v. Missouri Basin Mun. Power Agency, 2004 SD 14, ¶2, 675 NW2d 739, 740. However, the landowner's right to retain *possession* during this period is not the same as the right to benefit from collateral rights associated with a taking.

[¶59.] The question here is whether a landowner may, before possession is transferred, obstruct a pipeline route by intentionally constructing buildings or planting orchards or gardens to invoke collateral setback restrictions. Although the parties have not directed this Court to any authority addressing this issue, we note a helpful analogy in the law that prohibits a landowner from benefiting from rising land values after the location of a taking and the scope of the project have been announced.

[¶60.] This scope of the project rule prohibits a landowner from asserting a claim for increased compensation as a result of increasing land values after the taking has been announced. This Court follows the test set forth in *United States v. Reynolds*, 397 US 14, 90 SCt 803, 25 LEd2d 12 (1970), stating that: "[I]f the 'lands

-27-

were probably within the scope of the project from the time the Government was committed to it' no enhancement in value attributable to the project is to be considered in awarding compensation." City of Sioux Falls v. Johnson, 1999 SD 16, ¶42, 588 NW2d 904, 912-13 (citing *Reynolds,* 397 US at 21, 90 SCt at 807, 25 LEd2d at 18 (quoting United States v. Miller, 317 US 369, 377, 63 SCt 276, 281, 87 LEd 336, 344 (1943))). Under this rule, the land taken need not "be actually specified in the original plans for the project." *Id.* All that must be shown is "that during the course of the planning or original construction it becomes evident that the land so situated would probably be needed for public use." *Id.* In those situations, landowners may not seek the collateral benefit of enhanced land values arising from the announced taking. Similarly, we believe that if land is within the scope of a noticed taking, landowners should not be able to block or alter the route by constructing a dwelling house, other building, orchard or garden and thereafter claim entitlement to the collateral setback restrictions in SDCL 46-8-1.2.

[¶61.]     Here, Lewis & Clark committed to the scope of the project and publicly began negotiations to obtain easements along the intended route. Therefore, just as landowners are not entitled to benefit from any advanced value attributable to the announced scope of this project, they are also not entitled to benefit from the setback limitations if they construct a building or plant an orchard or garden to obstruct or alter the announced route. Although Landowners need not surrender possession until the taking, and although they may construct buildings or plant orchards or gardens at any time prior to the taking, Landowners may not thereafter

benefit from the collateral benefits of the setback limitation if it was evident that the land would be needed for the project.[9]

> *2(f)   Does a Circuit Court have Authority to Modify the Setback Restrictions in SDCL 46-8-1.2 if the Court Finds that a Modification Does the "Least Possible Injury to Private Property, Consistent with Sound Engineering Principles and with Economic Feasibility" Under SDCL 46-8-1.1?*

[¶62.]        Lewis & Clark contends that the circuit court erred when it concluded that it could judicially modify the restrictions of SDCL 46-8-1.2.  The circuit court apparently anticipated that the restrictions could be onerous under certain circumstances.  Therefore, it concluded that if a modification of the proposed pipeline route does the "'least possible injury to private property, consistent with sound engineering principles and with economic feasibility,' the restrictions contained in SDCL 46-8-1.2 may be judicially modified" under the authority of SDCL 46-8-1.1.[10]  We disagree with the circuit court's legal conclusion on this issue.[11]

---

9.      Although a landowner may not obstruct the pipeline within the scope of the project by intentionally constructing buildings, the circuit court found that the machine shed constructed by Buse was not constructed to try to obstruct the route.  That factual finding has not been challenged on appeal.

10.     SDCL 46-8-1.1 provides:

    Any exercise of the right of eminent domain under the provisions of this chapter shall do the least possible injury to private property, consistent with sound engineering principles and with economic feasibility.

11.     Although the landowners in these cases also disagree with the circuit court's ruling, they contend that the issue is not before this Court as the circuit court has not modified any of the restrictions of SDCL 46-8-1.2 and may never do so. However, we see an imminent conflict and address the issue.

[¶63.]     The language of SDCL 46-8-1.1 and 46-8-1.2 reflects that section 1.1 creates a general restriction limiting use of eminent domain in a manner that creates the least possible injury to private property consistent with sound engineering principles and with economic feasibility. Section 1.2, however, creates additional specific setback restrictions. Thus, we construe the specific setback restrictions in section 1.2 to prevail over the general provisions of section 1.1. We do so because we have often noted that where more than one statute touches upon the same subject matter, we presume that the statute with the more specific language "relating to a particular subject will prevail over the general terms of another statute." *Martinmaas*, 2000 SD 85, ¶49, 612 NW2d at 611 (citing Moss v. Guttormson, 1996 SD 76, ¶10, 551 NW2d 14, 17).

[¶64.]     We also note that although SDCL 46-8-1.1 does not authorize any modification of the setback conditions in SDCL 46-8-1.2, the circuit court's construction would repeal them. However, absent express language authorizing that repeal, we do not presume that one statute repeals the other. On the contrary, "[w]here statutes appear to conflict, it is our responsibility to give reasonable construction to both, and if possible, to give effect to all provisions under consideration, construing them together to make them 'harmonious and workable.'" City of Sioux Falls v. Ewoldt, 1997 SD 106, ¶14, 568 NW2d 764, 767 (citing Wiersma v. Maple Leaf Farms, 1996 SD 16, ¶4, 543 NW2d 787, 789).

[¶65.]     Considering these provisions together to make them harmonious and workable, we conclude that the circuit court may not judicially modify the specific limitations of SDCL 46-8-1.2 through the general provisions of SDCL 46-8-1.1. We

further conclude that section 1.1 was only intended to govern general pipeline parameters not addressed in section 1.2, such as the general route, size of the pipe, or width of the easements.

[¶66.]        Affirmed in part and reversed in part and remanded.

[¶67.]        GILBERTSON, Chief Justice, and SABERS, KONENKAMP and VON WALD, Circuit Judge, concur.

[¶68.]        VON WALD, Circuit Judge, sitting for MEIERHENRY, Justice, disqualified.