2001 SD 138

Cynthia GOETZ and Marlene Laible, individually and as Executors of the Estate of Kathleen Laible, Linda Petrocine, and Terra Laible, Plaintiffs and Appellees,

v.

STATE of South Dakota; Community Counseling Services; County of Beadle; County of Miner; Human Service Agency; Benny L. Laible, Defendants,

and

Office of State Court Administrator, Appellant.

No. 21297.

Supreme Court of South Dakota.

Argued April 25, 2000.

Decided Nov. 14, 2001.

Steve Jensen of Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett, Storm and Jensen, Sioux City, IA, and Mark V. Meierhenry and Robin Jacobson Houwman of Danforth, Meierhenry & Meierhenry, Sioux Falls, SD, for plaintiffs and appellees.

Rory King of Siegel, Barnett & Schutz, Aberdeen, SD, for petitioner and appellant.

ZINTER, Circuit Judge (on reassignment).

[¶ 1.] The State Court Administrator (SCA) filed a petition for an intermediate appeal from a discovery order enforcing a subpoena duces tecum. The discovery order provided for the trial court's *in camera* review of certain probation records.[1]

---

1. The resolution of some issues raised (but not necessarily decided) in this appeal is highly dependent upon the actual nature of the probation records. Unfortunately, the language of the subpoena is not specific. More-over, this is an intermediate appeal, and the actual records could not be included in the settled record. Because the nature of the actual records can determine the outcome of decided and undecided issues in this case, we

The probation records were generated by court services officers while performing probation supervision duties. The circuit court concluded that it had discretionary authority to review the records *in camera* for potential disclosure to civil plaintiffs. We granted the petition for intermediate review.[2] We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] On September 24, 1996, Benny L. Laible (Benny) killed his mother, Kathleen Laible (Kathleen). Benny was found guilty but mentally ill of second degree murder. SDCL 22–16–7, 23A–27–38. We affirmed his conviction on appeal. *State v. Laible*, 1999 SD 58, 594 N.W.2d 328.

[¶ 3.] The plaintiffs in this action are Kathleen's daughters (collectively referred to as Goetz). They instituted this civil action against the State of South Dakota, Community Counseling Services, Beadle County, Miner County, the Human Service Agency, Benny, his court services (probation) officers and his doctors.[3]

[¶ 4.] The allegations against the court services officers relate to their supervision of Benny while he was on probation. According to the supplemented record, Benny was on probation on two occasions. At oral argument, Goetz stated that the probation records they sought related to a Class 2 misdemeanor offense of possession of marijuana. Goetz contends that the terms and conditions of that probation required Benny to take medication to treat mental illness, to refrain from using alcohol, and to otherwise comply with the instructions of his court services officers. Goetz alleges that the court services officers were negligent in the following respects:

Failing to monitor and supervise Benny's conduct during the probation;

Failing to monitor and supervise Benny's compliance with prescription medications for the treatment of his mental illness;

Failing to notify a court of Benny's failure to comply with conditions of probation imposed by the court;

---

must make certain assumptions to decide this appeal.

We have reached our holding by making those assumptions from the available evidence in the record. The relevant evidence includes the Goetz's negligence allegations, the SCA's description of probation records and the discovery requests which underlie the subpoena and discovery order. That evidence, and especially the underlying discovery requests, strongly suggest that the subpoena only seeks the post-sentencing records of a court services officers' (probation officers') administrative activities in supervising a probationer. Because our opinion is fundamentally premised on that assumption, this opinion may not be construed to permit the disclosure of any records of any court, including a sentencing court's thoughts, comments or communications with a court services officer. So also, this opinion may not be construed to provide a second avenue for disclosure of pre-

sentence investigation reports. The disclosure of pre-sentence investigation reports is controlled by the more specific provisions of SDCL 23A–27–5, 7, 8, 9 and 10. Finally, this opinion does not authorize the disclosure of any privileged matters in court services records. Should inspection of the actual reports reveal that any of our assumptions are incorrect, the trial court is not bound by this Court's mandate.

2. Goetz argues the petition for intermediate appeal was not timely filed. However, there was substantial confusion concerning the time of service of the relevant orders of the circuit court. The timeliness and service issues were fully briefed when the petition for intermediate appeal was granted. Considering the confusion, we determined that the petition was timely and that service was sufficient.

3. The State and the Human Service Agency were subsequently dismissed from the action.

Failing to take, detain and place Benny in custody because of his non-compliance with the terms of his probation;

Failing to properly diagnose and treat Benny's mental illness.

[¶ 5.] During discovery, Goetz issued a subpoena commanding the Unified Judicial System (UJS) to "search the records of the Unified Judicial System *and Court Services* for parole and *court services records* pertaining to Benny L. Laible, including, but not limited to, all records of *communications between Benny L. Laible and any court services officer*." (emphasis added). The SCA moved to quash the subpoena, arguing that the records were "confidential" under SDCL 23A–27–47.[4] The circuit court denied the motion to quash. Instead, it ordered that it would examine the records *in camera* to determine relevance and whether one of the exceptions to confidentiality under SDCL 23A–27–47 could apply.

[¶ 6.] The circuit court emphasized that it intended to protect the confidentiality of the records. It stated:

Certainly in conducting the *in camera* examination of [these] records, this court will exercise extreme care to preserve the confidentiality of all records which should be kept confidential, either because of the facts ·and circumstances of this particular case, *or to preserve the expectation of confidentiality in general which would apply to discussions between a court service officer and a defendant or to preserve the confidentiality of sources.* Until I review the records.... I am not able to make a determination whether they are records that can be disclosed or not.

This can be done only after the *in camera* inspection.

(emphasis added). After the SCA asked for reconsideration, the circuit court gave further assurances. It stated:

Because of the apparent sensitive nature of this question to the State Court Administrator, it would seem appropriate in this case that after conducting the *in camera* inspection of the records ... the court will indicate to the State Court Administrator exactly what documents, if any, the court rules should be disclosed, at which time the State Court Administrator would have the opportunity to seek an appeal of the releasing of any such documents prior to their being disclosed pursuant to the subpoena. The court would include a list of the factors the court has utilized in making such disclosure decision upon notifying the State Court Administrator of the court's ruling after the *in camera* inspection.

[¶ 7.] The SCA appealed contending that the circuit court had no authority to conduct an *in camera* review of probation records for potential disclosure in a civil action. The SCA raised three issues. After oral argument we ordered further briefing on two other issues. We consider two issues to be dispositive.

## STANDARD OF REVIEW

■ [¶ 8.] There are no factual disputes involved in the issues we decide today. The issues are questions of law involving· statutory construction which we review de novo. *State v. Karlen,* 1999 SD 12, ¶ 6, 589 N.W.2d 594, 597.

---

**4.** We decide this case on this sole claim of statutory "confidentiality." The SCA makes no claim of privilege. Because privilege is not an issue, this opinion is no authority for the release of any privileged information contained in court services records. Many of the SCA's concerns (*see* n.5, *infra*) may be resolved by a privilege protection even if the evidence is discloseable under SDCL 23A–27–47.

## ISSUE ONE

[¶ 9.] **Whether, in civil litigation, SDCL 23A–27–47 gives a circuit court discretionary authority to permit disclosure of records prepared by a court services officer concerning the supervision of a probationer.**

[¶ 10.] By way of historical perspective, it is important to note that before SDCL 23A–27–47 was enacted in 1994, there was no confidentiality afforded to probation records. These records were first made confidential in 1994 after passage of Senate Bill 78 (S.B. 78). 1994 Sess.L. ch. 217. S.B. 78 was introduced at the request of the Chief Justice following its recommendation at the Judicial Conference. *See generally*, SDCL ch. 16–14. Although the Judicial Conference's proposal requested "privilege" status for court services records, the Legislature rejected that approach and made the records "confidential." 1994 House Journal, pp. 843–844.

[¶ 11.] As finally enacted, SDCL 23A–27–47 provides:

> Records prepared or maintained by court services officers are confidential. *However,* such records may be inspected by, or disclosed to, justices, judges, magistrates, and employees of the unified judicial system in the course of their duties *and to persons specifically authorized by order of the court.*

(emphasis added). This statute makes probation records generally confidential, but subject to two exceptions. The first exception only permits disclosure to UJS employees in the course of their duties. The second, more open-ended exception, is the subject of this appeal. It permits disclosure to others if it is authorized by the court.

[¶ 12.] Goetz contends that, subject to court discretion, they are parties who could be authorized to obtain the records under the second exception. Goetz points out that the second exception is open-ended and broad enough to include them because it contains no language limiting those who may qualify.

[¶ 13.] The SCA, however, argues that we should "construe" the open-ended court-authorized exception so that it is "highly restricted as to purpose, and the purpose must be exclusively related to internal court operations, criminal sentencing, and probation." The SCA also argues that the exception should be further "construed" so that the only persons who qualify for these "sentencing, probation and parole [purposes] ... include psychiatrists, psychologists, counselors, physicians and ministers." The SCA asks us to use the statutory construction canons of *ejusdem generis* and *in pari materia* to reach that result.

[¶ 14.] We agree with many of the SCA's policy reasons [5] for seeking a legis-

---

5. The general nature of probation records and the policy reasons for seeking confidentiality are set forth in the SCA's affidavit:

    ...

    2. Affiant has very serious concerns that the discoverability *of court services records* will have *significant impact upon the function of the court services officers.* Their field notes may contain personal and confidential information. Many people on probation have serious problems. Frequently, they are required to participate in counsel-

    ing programs or attend treatment programs as a condition of probation. Information is regularly exchanged between counselors and court services *regarding a probationer's progress.* Even here, however, information releases must generally be obtained before the counselor will discuss confidential matters. While I suspect that most probationers assume that counselors will discuss their progress with the assigned court services officer, I doubt they assume that those discussions will include general dissemina-

lative limitation on the open-ended exception to confidentiality created by SDCL 23A–27–47. However, neither the primary rules of statutory construction nor our precedent permit us to construe the significant statutory changes that the SCA suggests. In our judgment, the SCA's proposed construction would be an unwarranted judicial amendment of the statute.

## Primary Rules of Statutory Construction

[¶ 15.] This case requires us to examine the statutory language and apply canons of construction to determine the

tion of their mental health or chemical dependency problems to civil litigants.

3. Moreover, and particularly in the juvenile area, mental health counselors work closely with the family. Thus, a log entry might read: 'Spoke with X's counsel who feels he is making great progress, but also expressed concern that the mother (or father) is not dealing with their chemical abuse problems.' Thus, the information contained in these records goes beyond a particular probationer. I do not believe such information can be redacted from the whole of the records without compromising an accurate picture of the entire case. Thus, not only would a probationer's mental state become subject to discovery, but also potentially that of every family member, acquaintance, co-defendant, associates, co-workers, etc.

4. Court services also deals with very confidential medical information. Court services offices may have information that a probationer is HIV positive, has AIDS or suffers from hepatitis. This is particularly so in dealing with probationers who have a history of drug abuse. Release of such information in some cases, even in civil litigation, would be tantamount to broadcasting highly confidential medical history.

5. *Release of these records could endanger others.* Court services offices maintain records on contacts with others, particularly when preparing a presentence investigation (adults) or a pre-hearing social case study (juvenile). The information they obtain is reported to the court Informants, [sic] family members, school or professional counselors, friends, and law enforcement officers may all contribute to the report. While the names of individuals may not be in the report, log entries of contacts are maintained. If this information becomes discoverable, there is a real potential of criminal defendants or others linking unfavorable information to specific individuals, thereby *endangering people who gave information under a guarantee of confidentiality.*

6. *Court services records are intended as case management tools*, not as a running biography of the probationer. *The success of probation* depends on officers maintaining accurate, adequate and frank field notes. *These notes, or summaries thereof, are regularly exchanged with other officers. The notes are used to manage the case and to refresh an officer's memory of the contacts.* They may reveal very frank conclusions or impressions about the probationer's conduct. They may contain an officer's own emotional reaction to the conduct of a probationer ('He said he's not drinking—that's a flat out lie.'). If the notes become discoverable, *officers may fail to maintain adequate field notes, compromising effective probation supervision.* It is easier to say on the stand, 'I don't remember,' than it is to explain selected field notes. Field notes are *intended to assist the officer in managing a case;* they are not intended as a legal narrative of how the case was (or was not) supervised.

7. *Release of such information could inhibit the frank exchange needed to ensure a successful probation program.* The success or failure of a probationer depends on establishing a solid relationship between the probationer and the court services officer; one in which probationers know they will be held accountable for their conduct. It is difficult to establish such relationships when a probationer becomes evasive, uncooperative, or combative. I believe probationers may be less willing to cooperate if they know that statements they make (particularly where co-defendants are involved) may become public in civil litigation. Moreover, court services officers have relied on statutorily mandated confidentiality in managing their cases. (emphasis added). It is significant that the SCA raises no concern about any impact on any judge or judicial activity. His concerns all relate to the post-sentencing administrative activity of supervising probationers.

meaning of the open-ended exception to the general rule of confidentiality. In performing that analysis, we adhere to two primary rules of statutory construction. The first rule is that the language expressed in the statute· is the paramount consideration. The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction.

[¶ 16.] We explained the purpose of these primary rules of statutory construction in *US West v. PUC,* 505 N.W.2d 115, 123 (S.D.1993):

> The purpose of statutory construction is to discover the true intention of the law which is to be ascertained *primarily* from the language expressed in the statute. *Appeal of AT&T Information Systems,* 405 N.W.2d 24, 27 (S.D.1987). The intent of a statute is determined *from what the legislature said, rather than what the courts think it should have said,* and *the court must confine itself to the language used. Id.*
>
> Words and phrases in a statute must be given their *plain meaning and effect. Id. When the language of a statute is clear, certain and unambiguous, there is no reason for construction,* and the Court's *only function is to declare the meaning* of the statute as clearly expressed. *Id.*

(emphasis added).

[¶ 17.] In this case, the language of SDCL 23A–27–47 is clear, certain and unambiguous. Although a general rule of confidentiality was created, two exceptions were also created. The first exception is specifically enumerated and limited to those individuals who need no court order to review the records. That limited and specifically enumerated class only includes "employees of the unified judicial system in the course of their duties." SDCL 23A–

27–47. The second exception is general and open-ended because the plain language broadly includes any "persons specifically authorized by order of the court." *Id.* There is certainly no statutory language limiting this exception in the manner the SCA suggests.

[¶ 18.] Because the words used in the open-ended exception are clear and unambiguous, they can easily be given their plain meaning and effect. Under those circumstances, we have "repeatedly stated that ... it is the function of the court to give [the words] effect and not to amend the statute to avoid or produce a particular result." *Matter of Sales Tax Refund Applications,* 298 N.W.2d 799, 802 (S.D.1980). We therefore decline the SCA's invitation to construe the open-ended exception so that it only applies to psychiatrists, psychologists, counselors, physicians, ministers and the like when they are involved in sentencing, probation, or court operations. Such a result would judicially legislate new limitations on the open-ended exception.

[¶ 19.] In fact, the SCA's proposed construction of SDCL 23A–27–47 would result in the following judicial amendment of the statute: (the SCA's proposed additions to the statute are *underscored* and the SCA's proposed deletions are ~~overstricken~~):

> Records prepared or maintained by court services officers are confidential. However, such records may be inspected by, or disclosed to, justices, judges, magistrates, and employees of the unified judicial system in the course of their duties and ~~to persons~~ *if* specifically authorized by order of the court, *to psychiatrist, psychologists, counselors, physicians, ministers and the like if involved in the sentencing, probation or official functions of the court.*

[¶ 20.] Clearly, the plain language of SDCL 23A–27–47 does not support the

conclusion that the South Dakota Legislature intended these proposed additions and deletions when it enacted this statute. We therefore follow the paramount rule of statutory construction and simply declare "what the legislature said, rather than what the courts think it should have said." *US West*, 505 N.W.2d at 123. We do so even though the public policy reasons articulated by the SCA may justify an amendment of the statute.

[¶ 21.] The wisdom of refraining from judicially construing these changes is well illustrated by legislative action on an analogous confidentiality statute. In SDCL 26–8A–13, the Legislature made reports concerning child abuse generally confidential, but also subject to certain exceptions. However, unlike the court services statute, the Legislature *expressly limited* the child abuse exception in a manner very similar to that now suggested by the SCA; *i.e.,* disclosure is limited to those who need the records "in the performance of official functions." [6]

[¶ 22.] The explicit language used by the Legislature in the child abuse confidentiality statute is straightforward. It clearly demonstrates that the Legislature knows how to limit the release of confidential records in the manner the SCA suggests. It also demonstrates that when such a limitation is intended, the Legislature has utilized express language. The Legislature did not, however, adopt such a limitation in the court services statute. The inescapable conclusion is that the

SCA's proposed construction was not intended. The Legislature's express limitation on the exception in SDCL 26–8A–13, and the absence of that limitation in SDCL 23A–27–47 illustrate the impropriety of judicially construing the proposed changes.

## Secondary Rules of Statutory Construction

[¶ 23.] The SCA argues that we should use the rule of *ejusdem generis* to limit the open-ended exception so that it only applies to persons of the type enumerated in the specific exception for UJS employees. Even if SDCL 23A–27–47 was ambiguous [7] and we were permitted to use this secondary rule of construction, the SCA's invocation of *ejusdem generis* does not so limit the open-ended exception.

[¶ 24.] It is true that "[u]nder the time honored canon of *ejusdem generis,* where general words in a statute accompany the enumeration of particular classes of things, the general words will be construed as applying only to things of the same general kind as those enumerated." *Sioux Falls School District v. Koupal,* 526 N.W.2d 248, 252 (S.D.1994); *See also Wendell v. SD Dept. of Transportation,* 1998 SD 130, ¶ 7, 587 N.W.2d 595, 597; *State v. Galati,* 365 N.W.2d 575, 577 (S.D.1985); Black's Law Dictionary 357 (6th ed. 1990). However, this rule does not apply if the specifically enumerated class is exhaustive. On the contrary,

*[w]here the specific words embrace all the persons or objects of the class designated by the enumeration, the general*

---

**6.** The Legislature *expressly* provided:
All investigative case records and files relating to reports of child abuse or neglect are *confidential,* and no disclosure of any such records, files, or other information may be made except as authorized in chapter 26–7A or this chapter.... The Department of Social Services may release records, files, or other information to the following parties upon the receipt by the department of a

request *showing that it is necessary for the parties to have such information in the performance of official functions relating to child abuse or neglect ...*
SDCL 26–8A–13 (emphasis added).

**7.** The SCA has not argued that SDCL 23A–27–47 is ambiguous, and we decline to so find.

*words take a meaning beyond the class.* To apply the rule in this instance would render the general words meaningless for the reason that there is nothing of the same kind (*ejusdem generis*) to fall within their purview. Its application, consequently, would contravene the more important rule of construction that all words are to be given effect.... In order to prevent their rejection as surplusage, *the general words take an unrestricted meaning on the ground that the legislature, by the addition of general words to an* **exhaustive enumeration,** *must have intended that they have meaning outside the class.*

2A Sutherland, *Statutory Construction* § 47:21 (6th ed. 2000)(emphasis added). *See also, United States v. Mescall,* 215 U.S. 26, 31–32, 30 S.Ct. 19, 20–21, 54 L.Ed. 77, 79 (1909); *Mason v. United States,* 260 U.S. 545, 554, 43 S.Ct. 200, 202, 67 L.Ed. 396, 399 (1923); *Mid–Northern Oil Co. v. Walker,* 268 U.S. 45, 49–50, 45 S.Ct. 440, 441, 69 L.Ed. 841, 843 (1925).

[¶ 25.] In SDCL 23A–27–47, the first exception to confidentiality is an exhaustively enumerated class. It specifically enumerates all persons who do not need a court order to obtain the records. That specifically enumerated class is limited to "justices, judges, magistrates, and employees of the unified judicial system in the course of their duties." *Id.* The Legislature left no room to include any others in that class. Because that class is an enumeration of all persons who can obtain court services records without a court order, it is exhaustive. Because it is exhaustive, *ejusdem generis* does not restrict the second exception which is defined by general words. On the contrary, because the

specifically enumerated class of UJS employees is exhaustive, the subsequent general exception for "persons specifically authorized by order of the court" takes a meaning beyond the enumerated group.[8] 2A Sutherland, *supra,* at § 47.21. The general exception is certainly not restricted as the SCA suggests.

■■■■ [¶ 26.] Alternatively, the SCA argues that the open-ended exception should be read *in pari materia* with disclosure restrictions in statutes regulating presentence investigation reports. "Statutes are construed to be *in pari materia* when they relate to the same person or thing, to the same class of person or things, or have the same purpose or object." 2B Sutherland, *Statutory Construction,* § 51:03 (6th ed 2000). "Characterization of the object or purpose is more important than characterization of the subject matter in determining whether different statutes are closely related enough to justify interpreting one in light of another." *Id.*

[¶ 27.] The SCA specifically argues that the restrictions on access to pre-sentence investigation reports in SDCL 23A–27–5, 7, 8, 9 and 10, should be incorporated into SDCL 23A–27–47. We disagree for three reasons.

[¶ 28.] First, although all provisions deal with records created by court services, the statutes deal with different things. Pre-sentence investigation reports are different than probation and all *other* court services' records.

[¶ 29.] Second, the statutes governing the creation and use of pre-sentence investigation reports do not have the same purpose or object as SDCL 23A–27–47.

---

**8.** If the Legislature had left the enumerated class of UJS employees open to include others, one could not decipher where that class ended. In that instance, it would be appropriate to apply *ejusdem generis* to narrow the subsequent general class of persons specifically authorized by order of the court to the type of persons previously enumerated. This is not, however, how the first exception was passed by the Legislature.

The purpose and object of the pre-sentence investigation statutes is to generate meaningful information about a criminal defendant for the court's assistance in imposing a sentence in a particular case. SDCL 23A–27–6. To facilitate that purpose, those statutes strictly limit disclosure to the court, the state, the defendant, the defendant's counsel, and the prison officials *involved in the case before the court.* On the other hand, the purpose and object of SDCL 23A–27–47 is to regulate disclosure of all *other* records not necessarily involving a court proceeding. *See* 1994 Sess.L. ch. 217. Although both statutes concededly relate to records prepared by court services, the purpose for the records and their intended audiences are different. Moreover, the confidentiality concerns that relate to all other records necessarily implicate many other considerations than those only relating to pre-sentence reports. Therefore, the purposes and objectives of disclosure under SDCL 23A–27–47 are much broader. For example, see the SCA's myriad of concerns at n.5, *supra.* These broader objects and purposes relating to court services records do not warrant the inference that the narrow statutory restrictions related to pre-sentence reports necessarily apply to the broader statute. We conclude that neither the records regulated, nor the purpose for their regulation, is sufficiently similar to impose pre-sentence investigation disclosure restrictions on all other court services records.

[¶ 30.] Third, and most importantly, the "rule of *in pari materia* is generally used when there is some doubt or ambiguity in the wording of the statute under construction." 2B Sutherland, *supra,* at § 51.03. However, as previously noted, the words used in the open-ended exception to SDCL 23A–27–47 have plain meaning and effect. The SCA has not argued otherwise. In the absence of ambiguity, this Court does not even apply *in pari materia,* a secondary rule of statutory construction.

### Prior Precedent

[¶ 31.] We finally note that the circuit court's discretionary authority to release this type of confidential information is supported by recent precedent of this Court. In *E.P. v. Riley,* 1999 SD 163, 604 N.W.2d 7, a number of plaintiffs sought discovery of confidential Department of Social Services (DSS) records relating to abused and neglected children. Like the case now before us, the plaintiffs in *E.P.* were seeking the records for use in civil litigation against state employees who were allegedly negligent in supervising others.[9]

[¶ 32.] In *E.P.,* the DSS turned the files over to the circuit court. After an *in camera* review, the circuit court released some, but not all of the records. The circuit court relied in part on the confidentiality provisions of SDCL 26–6–20, 26–8A–13, and 26–7A–27. The plaintiffs appealed claiming that DSS employees were "hiding behind the confidentiality statutes...." *Id.* at ¶ 44, 604 N.W.2d at 19. On appeal, we affirmed the circuit court's partial release of the confidential records to the plaintiffs. We held that it was within the discretion of the circuit court to determine what confidential records could be released for the non-official purposes of that civil litigation.

[¶ 33.] We recognize that in *E.P.,* the DSS did not object to the circuit court's *in camera* inspection. Nevertheless, we expressly held, under an analogous confidentiality statute, that the disclosure decision

---

9. This statement is no expression of the relative extent of control exercised by court services over probationers and that exercised by DSS over children.

was within the discretion of the circuit court. Moreover, we affirmed the disputed disclosure of similar confidential records to unrelated civil litigants for an unofficial use; that is, for use in a negligence suit against the children's supervisors. We have not been persuaded that there are sufficient differences in SDCL 23A–27–47 to require a different rule for probation records. Indeed, it would be an anomalous result if, under similar statutes, the confidential records of probationers under the supervision of court services officers are not subject to discretionary disclosure by the court when the confidential records of children under the supervision of DSS are subject to such disclosure.

[¶ 34.] We defer to the plain language of the statute and decline to judicially construe the changes the SCA suggests. We leave it to the legislature to consider those proposed changes.

## ISSUE TWO

[¶ 35.] **Whether the records sought are relevant in the civil suit.**

■ [¶ 36.] The SCA argues that the records at issue are not relevant because a probation officer owes no duty to third

parties arising out of a probation relationship. The SCA also argues that court services officers are immune from this suit.

[¶ 37.] There are motions now pending before the circuit court which could determine these issues. However, this intermediate appeal has deprived the circuit court of the opportunity to first consider them. Moreover, there may be undeveloped fact issues implicated by the SCA's arguments. Because this is only an intermediate appeal involving a discovery dispute, these issues are not ripe for review.

[¶ 38.] We affirm.[10]

[¶ 39.] AMUNDSON, Acting Chief Justice, GILBERTSON, Justice, and KERN, Circuit Judge, concur.

[¶ 40.] KONENKAMP, Justice, dissents.

[¶ 41.] ZINTER. Circuit Judge, for MILLER, Retired Chief Justice, disqualified.

[¶ 42.] KERN, Circuit Judge, for SABERS, Justice, disqualified.

KONENKAMP, Justice (dissenting).

[¶ 43.] "Records prepared or maintained by court services officers are confi-

---

10. I respectfully disagree with the dissent for three reasons. First, there is no dispute that SDCL 23A–27–47 is physically located in a chapter of the code that governs criminal procedure. However, SDCL 23A–27–47 does not regulate criminal procedure. Rather, like statutes creating privileges, SDCL 23A–27–47 is a substantive grant of confidentiality. Consequently, the substantive statute's physical location in a chapter governing criminal procedure is of little consequence in determining the scope of the substantive grant of confidentiality. Second, the express language· of the statute does not provide that "the purpose for the release must be related to 'criminal proceedings' …" dissent at ¶ 44. Because the plain language of the statute does not so limit disclosure, we should not construe the statute in that manner. Finally, even if the statute

was only applicable to a criminal proceeding, the records would still be subject to civil discovery. As pointed out in ¶ 10 *supra*, there was *no confidentiality* status afforded these records in any proceeding (civil or criminal) until the 1994 enactment of SDCL 23A–27–47. Significantly, the SCA now seeks confidentiality status in this civil proceeding under this statute which contains both the grant of confidentiality and the exceptions. Therefore, if the entire statute is inapplicable to this civil proceeding, then there is not only no exception to apply, but also no statutory grant of confidentiality available to prevent discovery.

We do, however, agree with both the dissent's and the trial court's guidelines for exercising discretion in a disclosure decision. See ¶ 6 *supra* and ¶ 45 *infra*.

dential." SDCL 23A–27–47. Here, a rule of criminal procedure is being used improperly to obtain discovery in a civil action. Title 23A governs "the procedure to be used in the courts of this state in all *criminal* proceedings...." SDCL 23A–1–1 (emphasis added). The physical location of SDCL 23A–27–47 in the chapter dealing with criminal procedure is no mere happenstance. The Legislature clearly intended it to be there, as evidenced by its 1994 enactment: "That chapter 23A–27 be amended by adding thereto a NEW SECTION to read as follows...." South Dakota Session Laws 1994, ch 217, § 2.

[¶ 44.] Rules regarding criminal procedure are not applicable to civil procedure. In the absence of a statute authorizing their release, these confidential records are not subject to civil discovery. If the Legislature wanted to authorize disclosure in noncriminal matters, it knew how to declare when a statute should apply to both criminal and civil proceedings. *See, e.g.,* SDCL 15–14–4. The only exception is provided in SDCL 23A–27–47 itself: "However, such records may be inspected by, or disclosed to, justices, judges, magistrates, and employees of the unified judicial system in the course of their duties and to persons specifically authorized by order of the court." This list can be expanded to include others not named so long as they obtain a court order, but the purpose for release must be related to "criminal proceedings," as that is all the statute encompasses. SDCL 23A–1–1.

[¶ 45.] Lastly, if these confidential materials are now going to be discoverable in civil suits, then I think it incumbent on the majority to give courts some guidance on the timing and manner of their release. Leaving it to pure discretion will create inconsistency and conflict. The case of *E.P. v. Riley,* 1999 SD 163, 604 N.W.2d 7 provides no authority here since, as the majority seems to acknowledge, it is *dicta* because the DSS records in that case were turned over without objection. Analogously, in dealing with the release of secret grand jury records, the United States Supreme Court held that these materials may be breached only when (1) they are needed to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure is greater than the necessity for continued confidentiality; and (3) the request is structured to cover only needed materials. *Douglas Oil v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). The probation records should not be released at all, but if they are going to be released, then these three criteria should serve as guides.