#24581-a-SLZ

**2008 SD 64**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

RICHARD ACA MOSS,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE WILLIAM J. SRSTKA, JR.
Judge

* * * *

LAWRENCE E. LONG
Attorney General

ANDREW KNECHT
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                          and appellee.

KENNETH M. TSCHETTER
Sioux Falls, South Dakota                    Attorney for defendant
                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY  11, 2007

OPINION FILED **07/09/08**

#24581

ZINTER, Justice

[¶1.] Richard Aca Moss was convicted of indecent exposure in violation of SDCL 22-24-1.2. Moss appealed the magistrate court jury verdict to circuit court, and the circuit court affirmed. On appeal to this Court, Moss argues that the evidence was insufficient to support the verdict. He also argues that the magistrate court erred in denying his request to submit a jury instruction and argument supporting a theory that he was not guilty of the charged offense because his conduct did not satisfy the elements of the charged offense *and* the State could have charged him with a related offense. We affirm.

I

[¶2.] On the afternoon of February 22, 2006, Moss drove into the parking lot of Elmwood Park, a public park in Sioux Falls, South Dakota. He parked his vehicle next to Ron Miklos's vehicle. Miklos entered Moss's vehicle, and the two men engaged in a brief conversation. Miklos then left Moss's vehicle and walked across the parking lot to speak with Miklos's former roommate Scott Augustine, who was in a third vehicle.

[¶3.] After Miklos entered Augustine's vehicle, they both noticed two other men parked in a pickup truck a few parking spaces away. Miklos and Augustine were not aware that the two men in the pickup truck were undercover Sioux Falls Police Detectives David Dunteman and Pat Kneip. Miklos and Augustine testified that the men were simulating masturbation and oral sex. They also testified that they believed Dunteman and Kneip were "looking for homosexual activity." The detectives, however, testified that they were merely observing Miklos and

-1-

Augustine, and that Miklos and Augustine were frequently looking at the officers and attempting to make eye contact.

[¶4.] In any event, after about twenty minutes, Augustine decided to leave the park, and Miklos returned to Moss's vehicle. Miklos informed Moss what Miklos had observed and that he thought the two men in the pickup truck "might be looking for some gay action." Miklos and Moss decided to take a walk in the park. They walked over an abandoned bridge located near the northwest corner of the parking lot, went into a wooded area, and noticed that the detectives were following them. After the detectives went under the bridge, Miklos and Moss turned around and proceeded back to the bridge.

[¶5.] The bridge is located around thirty-five yards from the parking lot. It is within the clear, unobstructed view of baseball fields, swing sets, and playground equipment. Further, bushes and shrubs only partially obstruct a view of the area under the bridge.

[¶6.] The four men met under the bridge at a time when no one else was present in the park. There was a factual dispute whether other individuals were present in vehicles in the parking lot. The four men began a conversation about the weather. Moss and Miklos then asked the detectives why they were at the park. The detectives replied that they wanted to see if "there was any action going on in the park." Dunteman then said that he and Kneip "liked to watch" and "were looking for a show." Miklos replied, "Well, we can give you a show, but do me a favor and look out for the police." Moss then pulled down his pants, and Miklos began

performing oral sex on Moss. Dunteman informed Moss and Miklos that he and Kneip were police detectives, and they placed Moss and Miklos under arrest.

[¶7.] Moss was charged with indecent exposure, in violation of SDCL 22-24-1.2 (2005). At the close of the State's case, Moss moved for a judgment of acquittal based on insufficient evidence. Moss also requested to present jury instructions and argument that he was innocent because his conduct may have constituted the uncharged offense of public indecency under SDCL 22-24-1.1 (2005). The magistrate court denied Moss's request. The jury returned a guilty verdict, and Moss appealed to circuit court. The circuit court affirmed the conviction.

[¶8.] On appeal to this Court, Moss raises the following issues: (1) whether there was sufficient evidence to prove the elements of indecent exposure, and (2) whether the magistrate court abused its discretion in refusing to allow Moss to present jury instructions and argument that he may have committed the related, but uncharged offense of public indecency.

II

Sufficiency of the Evidence

[¶9.] Our standard of review of the sufficiency of evidence is well-settled.

> "In determining the sufficiency of the evidence on appeal in a criminal case, the issue before this Court is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt." In making that determination, "we accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict." Moreover, "the jury is . . . the exclusive judge of the credibility of the witnesses and the weight of the evidence." Therefore, this Court does not resolve conflicts in the evidence, or pass on the credibility of witnesses, or weigh the evidence.

State v. Bordeaux, 2006 SD 12, ¶6, 710 NW2d 169, 172 (citations omitted). "A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." State v. Motzko, 2006 SD 13, ¶6, 710 NW2d 433, 437. To determine the sufficiency of evidence in this case, we must interpret and apply the indecent exposure statute. Our review of statutory interpretation is de novo, giving no deference to the circuit court's conclusions of law. State v. Ducheneaux, 2007 SD 78, ¶2, 738 NW2d 54, 55.

[¶10.]     The jury convicted Moss of indecent exposure, in violation of SDCL 22-24-1.2. Under that statute,

> A person commits the crime of indecent exposure if, with the intent to arouse or gratify the sexual desire of any person, the person exposes his or her genitals in a public place under circumstances in which that person knows that person's conduct is likely to annoy, offend, or alarm another person. . . .

SDCL 22-24-1.2. In *State v. Plenty Horse*, we described the elements of this statute:

> To be guilty of the offense, first, defendant must have exposed himself in public. Second, defendant must have exposed himself in public under circumstances he knew would likely offend, annoy, or alarm another person. Third, defendant must have exposed himself in public with "the intent to arouse or gratify the sexual desire of any person."

2007 SD 114, ¶8, 741 NW2d 763, 766 (citation omitted).

[¶11.]     In this case, Moss concedes that he exposed his genitals, that he did so in a public place, and that he did so with the intent to arouse or gratify the sexual desire of a person. Moss, however, asserts that, under the second element, he must have actually known his exposure would likely annoy, offend, or alarm another person. Furthermore, Moss claims this element requires the actual presence of a victim/witness. He argues that because there was no evidence of any witness other

-4-

than Dunteman and Kneip, the State did not prove that Moss "knew" his exposure was likely to annoy, offend, or alarm another person. We disagree for two reasons.

[¶12.]	First, even if the presence of an actual victim/witness were required, two victims/witnesses were present. Both detectives were members of the public, who were present enforcing the laws of South Dakota in a public place at the time of the exposure. Although Moss argues that the detectives "impliedly consented to witnessing the exposure" by their statements to Moss and Miklos, the detectives' use of suggestive language as a law enforcement technique does not mean that the officers could not be offended by Moss's conduct. We reject Moss's suggestion that police officers cannot, as a matter of law, be offended by indecent exposure, precluding them from being a victim/witness of the conduct.

[¶13.]	Second, SDCL 22-24-1.2 does not require actual knowledge that the conduct will offend, annoy or alarm a victim/witness who is present. The second element of the statute only requires that the defendant "must have exposed himself in public *under circumstances* he knew would *likely* offend, annoy, or alarm another person." *Plenty Horse,* 2007 SD 114, ¶8, 741 NW2d at 766 (emphasis added). With respect to the knowledge requirement, "[a] person has knowledge if that person is aware that the facts exist which bring the act . . . within the provision of any statute." SDCL 22-1-2(1)(c). Therefore, to commit this offense, Moss must have exposed himself in public being aware that factual circumstances existed that the exposure would likely offend, annoy, or alarm another person. Because this element only requires an awareness that *factual circumstances existed* under which the exposure would *likely* offend, annoy or alarm, the test is objective. Furthermore,

there is nothing in the text of the statute requiring knowledge that the exposure would cause offense, annoyance, or alarm to some person actually present.

[¶14.] Nevertheless, the dissent utilizes five paragraphs of statutory construction aids to add that element to the statute, opining that the exposure must occur in "the presence of a victim." *See infra* ¶¶33, 35, and 37. The dissent would add that element despite the fact that the actual presence of a victim was an element of the predecessor statute, but that element was repealed when the predecessor statute was revised and reenacted as SDCL 22-24-1.2 in 1998.[1] Notwithstanding the express repealer, the dissent opines "the presence of a victim remains a required element of the crime." *Infra* ¶37.

[¶15.] That judicial construction overlooks the plain text and the elementary fact that had the Legislature intended to retain that element, it would have simply retained the prior statutory language "where there is present any person." *See supra* n1. The dissent also engages in speculative judicial construction[2] without the predicate finding of ambiguity. It ultimately overlooks our often-stated paramount rules of statutory construction:

> The first rule is that the language expressed in the statute is the paramount consideration. The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction.

---

1. The repealed statute expressly required that the exposure take place "where there is present any person." SDCL 22-24-1 (repealed, 1998 SD Sess Laws ch 136 § 1). The 1998 Legislature removed that language from SDCL 22-24-1.2.

2. The dissent reaches this result construing 1998 legislative intent from a 2005 amendment of a related statute. *See infra* ¶36.

Goetz v. State, 2001 SD 138, ¶15, 636 NW2d 675, 681; *In re* West River Elec. Ass'n,

Inc., 2004 SD 11, ¶15, 675 NW2d 222, 226.  We follow these rules because:

> The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used.
>
> Words and phrases in a statute must be given their plain meaning and effect.  When the language of a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed.

*Goetz*, ¶16, 636 NW2d at 681 (emphasis original) (citations omitted).  Therefore, "we

may not, under the guise of judicial construction, add modifying words to the statute

or change its terms."  City of Sioux Falls v. Ewoldt, 1997 SD 106, ¶13, 568 NW2d

764, 767.  Because the Legislature explicitly removed the actual presence of a victim

element from this version of the indecent exposure statue, this Court should not

"construe" that element back into the statute.   Even if there were an ambiguity, we

could not construe that element into the statute because, as we stated long ago:

> [W]hen the Legislature makes a revision of a particular statute, and frames a new statute upon the subject-matter, and from the framework of the act it is apparent that the Legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded.  It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory.

Burnett v. Myers, 42 SD 233, 235, 173 NW 730, 731 (1919).

[¶16.]        Finally, even if actual presence were an element, and even if

Dunteman and Kneip had not been present, the evidence was sufficient for a jury to

have found that Moss exposed himself in a public place aware of circumstances

under which his exposure was likely to offend, annoy, or alarm another. There was a factual, evidentiary dispute at trial concerning the presence of other victims in other vehicles in the parking lot at the time of the exposure, and Moss does not dispute the area under the bridge was partially viewable from the parking lot. Moss testified that there were no leaves on the surrounding deciduous trees, and that it was a bright afternoon day. He also testified that he knew he was in a public park where anyone was free to enter or leave, and that at various times there were other people in the parking lot he did not recognize. There is also no dispute that the bridge was within view of baseball fields, playground equipment, a picnic shelter, and a bike path that ran adjacent to the park. Finally, prior to engaging in the act, Miklos, in Moss's presence, asked the detectives to watch for the police. Moss even testified that at the time of exposure, he had concerns about whether somebody else would arrive. In viewing these facts and the inferences to be drawn therefrom in a light most favorable to the jury verdict, a reasonable jury could have found that Moss was aware that the facts and circumstances of that location were such that his conduct was likely to annoy, offend, or alarm another person.

[¶17.]     Moss finally points out that indecent exposure is classified as a "sex crime" requiring registration as a sex offender. SDCL 22-24B-1(11). Moss notes that the legislative intent behind the sex offender registration legislation was to protect the public from future victimization. Moss argues that there was no witness/victim in this case, and therefore future revictimization could not occur. From this, Moss concludes that his conduct could not have been a sex crime, and if not, it does not fall under the indecent exposure statute.

[¶18.]     Moss, however, fails to recognize that no matter what the Legislature's intent in enacting sex offender registration legislation, sex offender registration is not an element of indecent exposure: it is a consequence of that offense. Therefore, whether indecent exposure is a sex crime under the registration statutes is irrelevant in determining the sufficiency of evidence. Moss also fails to recognize that his conduct was witnessed by at least two victims; and, even if it had not been witnessed, future similar conduct may victimize a member of the public. Moss finally fails to recognize that "the Legislature's intention in requiring registration was to accomplish the regulatory purpose of assisting law enforcement in identifying and tracking sex offenders to prevent future sex offenses, especially those against children." Meinders v. Weber, 2000 SD 2, ¶13, 604 NW2d 248, 255. Therefore, it is reasonable to conclude that the Legislature intended to require people who have committed indecent exposure to register as sex offenders, even if the occurrence was not witnessed by anyone other than police. It is certainly reasonable to assume that the Legislature intended registration in cases where indecent exposure takes place in a public park near children's playground equipment, which is an area designated as a community safety zone under SDCL 22-24B-22(1).[3]

III

Uncharged Offenses

---

3.     "'Community safety zone,' [is] the area that lies within five hundred feet from the facilities and grounds of any school, public park, public playground, or public pool, including the facilities and grounds itself[.]" SDCL 22-24B-22(1). As a registered sex offender, Moss would be precluded from residing or loitering in these areas.

[¶19.]     Initially, it must be observed that this is not a case in which Moss was ever prohibited from arguing that his conduct did not rise to the level necessary to meet the elements of indecent exposure.  In addition to arguing that point, Moss asked the trial court to instruct and let him argue that "there is another charge here [public indecency] that the State could have charged [him] with."  Moss contended that "the jury was entitled to know that another, lesser criminal statute proscribed the offending conduct."  On appeal, Moss concedes that public indecency[4] is not a lesser-included offense of indecent exposure, but argues that the jury should have been instructed and he should have been permitted to argue that the State could have charged the uncharged offense of public indecency.

[¶20.]     Before the trial court, Moss explained his request as follows:

> Public indecency . . . is a related offense, and it's our theory of defense that what happened here meets the elements of that lesser offense, but doesn't rise to level of indecent exposure, and its--I think we're entitled to tell that to the jury. . . .  I want to be able to tell the jury that there is another law that covers this conduct[.]

---

4.     The public indecency statute, SDCL 22-24-1.1 (2005), provides, "[a] person commits the crime of public indecency if the person, with an immoral purpose, exposes his or her anus or genitals in a public place where another may be present who will be offended or alarmed by the person's act."  Public indecency is a Class 2 misdemeanor, as opposed to indecent exposure, which is a Class 1 misdemeanor.  *See* SDCL 22-24-1.1 and 22-24-1.2.  Moss concedes that public indecency is not a lesser-included offense of indecent exposure and that he is not entitled to a public indecency instruction under our lesser-included jurisprudence.  *See* State v. Giroux, 2004 SD 24, ¶__, 676 NW2d 139, ___.

He further explained that "without being informed of any alternative, such as [the] public indecency charge, the jury's only choice was a conviction for the greater charge, [the Class 1 misdemeanor], indecent exposure."

[¶21.]     The trial court denied Moss's proposed instruction, and with respect to his proposed argument ruled: "I think you can make your [argument in] closing and if there's an objection, we'll deal with it at that time." The court further ruled that it was only "inclined, depending on how it was argued that you are arguing jury nullification." Because these were not final rulings on the argument request, and because Moss has not pointed to any place in the record where he was subsequently precluded from arguing any portion of this theory in closing statements, we decline to review the issue on appeal. *See* Cooper v. Cooper*, 299 NW2d 798, 800 (SD 1980) (providing: "The appellant must affirmatively establish a record on appeal that shows the existence of error. He . . . must show that the trial court was given an opportunity to correct the grievance he . . . complains about on appeal.")[5]

[¶22.]     The remaining question is whether Moss was entitled to his proposed jury instruction that his conduct may have violated a related statute other than the one for which he was charged. Moss's proposed instruction provided:

---

5.     During opening statements, Moss did attempt to argue other crimes, telling the jury that the trial might involve a discussion of "another statute that classifies a different sort of crime about having sex in a public place, and you're going to have the question put to you, well, did they do that . . . ." At this point, an objection was raised and an off-the-record discussion occurred. Moss did not, however, preserve a record of that discussion and the court's ruling. Therefore, we do not review any alleged error or prejudice arising in the opening statement. *Cooper,* 299 NW2d at 800.

The Defendants are charged with Indecent Exposure. As previously instructed, this crime requires a finding by you that the exposure of genitals took place under circumstances that Defendants knew that their conduct was likely to annoy, offend, or alarm another person.

It is a separate crime under South Dakota Law if a person with an immoral purpose, exposes his genitals in a public place, where another person may be present who will be offended or alarmed by the person's act. This crime of Public Indecency does not require a finding that the Defendants knew that their conduct was likely to annoy, offend, or alarm another person.

If you find that genital exposure occurred in a public place, where another person may be present who will be offended or alarmed by the exposure (Public Indecency), you must acquit the Defendants of the crime charged, unless you also find that the exposure of genitals took place under circumstances in which Defendants knew that their conduct was likely to annoy, offend, or alarm another person.

It is the Defendants' claim that at most, the facts at issue show the lesser offense of Public Indecency. If you find that Public Indecency as defined above occurred, but without Defendants' knowledge that their conduct was likely to annoy, offend, or alarm another person, you must acquit the Defendants of the Indecent Exposure charge.

[¶23.] "We review a trial court's refusal of a proposed instruction under an abuse of discretion standard. The trial court has broad discretion in instructing the jury." State v. Martin, 2004 SD 82, ¶21, 683 NW2d 399, 406. "Error in declining to apply a proposed instruction is reversible only if it is prejudicial, and the defendant has the burden of proving any prejudice." *Id.* This Court reviews jury instructions as a whole and will not find them erroneous if they correctly state the law and inform the jury. Cody v. Edward D. Jones Co.*,* 502 NW2d 558 (SD 1993).

[¶24.] The magistrate court refused the instruction because it did not correctly state the law. We agree for two reasons. First, the last paragraph of the

proposed instruction incorrectly omits substantive language that the jury must consider. The indecent exposure statute only requires that the exposure take place "under circumstances in which" the defendant knows that his conduct is likely to annoy, offend, or alarm another person. SDCL 22-24-1.2. Moss's proposed instruction omits this quoted language, and its omission misstates the applicable law.

[¶25.] Second, Moss was not entitled to have the jury instructed on uncharged crimes that were not lesser-included offenses. Moss's reliance upon *Sanborn v. Commonwealth,* 754 SW2d 534 (KY 1988) is misplaced. *Sanborn* held that a defendant was, as his theory of defense, entitled to an instruction on a related offense that was not a lesser-included offense. *Id.* at 549-50. Moss fails to note, however, that *Sanborn* was a plurality opinion that was overruled by *Hudson v. Commonwealth*, 202 SW3d 17 (KY 2006). In *Hudson*, the defendant argued that he was not guilty of driving while under the influence of alcohol because he was not the driver. To further support his defense, he also argued that he was entitled to a jury instruction on the related offense of alcohol intoxication, which carried a lesser penalty. Like South Dakota, under Kentucky law a "defendant has a right to have every issue of fact raised by the evidence *and material to his defense* submitted to the jury on proper instructions." *Id.* at 19 (citation omitted). Nevertheless, *Hudson* observed that because public intoxication was not a lesser-included offense, the defendant could be convicted of both offenses if properly charged. Thus, the court held that "the fact that the evidence would support a guilty verdict on a lesser

uncharged offense does not entitle a defendant to an instruction on that offense." *Id.* at 21. Instead, the rule is:

> An instruction on a separate, uncharged, but "lesser" crime--in other words, an alternative theory of the crime--is required only when a guilty verdict as to the alternative crime would amount to a defense to the charged crime, *i.e.*, when being guilty of both crimes is mutually exclusive.

*Id.* at 22.[6] *Hudson* explained that instructing on related but uncharged crimes, whenever the evidence suggests the existence of such crimes, "would allow a criminal appellant to seek reversal of his conviction simply because the trial court failed to instruct as to all the criminal acts he may have committed, regardless of whether the other uncharged crimes have any bearing on guilt as to the charged crimes." *Id.*

[¶26.]     Our jurisprudence supports *Hudson's* rule of law. *See* State v. Goodman, 384 NW2d 677, 682 (SD 1986) (concluding that because simple assault is not a lesser-included offense of child abuse, the trial court did not err in refusing to adopt defendant's proposed instruction on simple assault); and State v. McGarret, 535 NW2d 765, 769 (SD 1995) (concluding that because grand theft, aggravated assault, and simple assault do not constitute lesser-included offenses of first-degree robbery, the trial court did not err in denying defendant's proposals).

[¶27.]     In this case, it is conceded that public indecency is not a lesser-included offense of indecent exposure because the two offenses have different elements.

---

6.     This rule also renders Moss's reliance on *United States v. Brown*, 33 F3d 1002 (8thCir 1994) inapposite. Unlike Moss's case, *Brown* involved a situation where the defendant could not have been convicted of the charged and uncharged offenses.

Further, the only element in dispute at trial was whether the exposure occurred under circumstances where Moss knew that it was likely to offend, annoy or alarm another person. Because the jury would not have been required to consider that element under a public indecency charge, the jury's finding on public indecency could not have been a legal defense to the crime of indecent exposure. Therefore, even if Moss were guilty of public indecency, that guilt would have no bearing on his guilt or innocence of indecent exposure. Because the public indecency offense was not material to his defense, Moss was not entitled to an instruction on the existence of another related crime, which may have proscribed similar conduct. Consequently, the magistrate court did not abuse its discretion in denying Moss's request for an instruction on public indecency.

[¶28.]        Affirmed.

[¶29.]        GILBERTSON, Chief Justice, and KONENKAMP, Justice, concurs.

[¶30.]        SABERS and MEIERHENRY, Justices, dissent in part and concur in result in part.

SABERS, Justice (dissenting in part and concurring in result in part).

[¶31.]        I join Justice Meierhenry's writing in all respects. Under the statutes, law enforcement officers who consent to witness acts of indecent exposure cannot be considered victims.


MEIERHENRY, Justice (dissenting in part and concurring in result in part).

[¶32.]	I dissent on the majority's interpretation of the indecent exposure statute as well as its characterization of the detectives as victims; however, I concur in the result.

[¶33.]	Moss contends that the State failed to prove he was guilty of the crime of indecent exposure because the evidence did not support an element of the crime, that is, that a victim be present and that the perpetrator "knows [his/her] conduct is likely to annoy, offend, or alarm" the present victim. Citing SDCL 22-24-1.2 (indecent exposure).[7] Moss's interpretation of the statute has merit; nevertheless, based on the evidence the conviction should be affirmed.

[¶34.]	South Dakota's statutory scheme contains three separate statutes that criminalize the exposure of one's genitals -- public indecency, indecent exposure and indecent exposure involving a child. When these statutes are considered *in pari materia*, it appears the legislature intended to require the presence of a victim for the crimes of indecent exposure and indecent exposure involving a child, but expressly excluded the necessity for the presence of a victim for public indecency. SDCL 22-24-1.1 (public indecency); SDCL 22-24-1.2 (indecent exposure), SDCL 22-24-1.3 (indecent exposure involving a child).

---

7.	SDCL 22-24-1.2 provides in pertinent part as follows:
	A person commits the crime of indecent exposure if, with the intent to arouse or gratify the sexual desire of any person, the person exposes his or her genitals in a public place under circumstances in which that person knows that person's conduct is likely to annoy, offend, or alarm another person. A violation of this section is a Class 1 misdemeanor. . . .

[¶35.]      We have said that "[t]he object of the rule of *[in] pari materia* is to ascertain and carry into effect the intention of the legislature. It proceeds upon the supposition that the several statutes [are] governed by one spirit and policy, and [are] intended to be consistent and harmonious in their several parts and provisions." Lewis & Clark Rural Water System, Inc. v. Seeba, 2006 SD 7, ¶15, 709 NW2d 824, 831 (citations omitted) (noting that the maxim of *in pari materia* requires the attempt to harmonize statutes). "Statutes must be construed *in pari materia* when 'they relate to the same person or thing, to the same class of person or things, or have the same purpose or object.'" *Id.* (quoting Goetz v. State, 2001 SD 138, ¶26, 636 NW2d 675, 683 (citing 2B Sutherland, *Statutory Construction,* § 51:03 (6th ed 2000))). *See also* State v. Plenty Horse, 2007 SD 114, ¶5, 741 NW2d 763, 765 (noting "In construing a statute, we attempt to ascertain its intent. The intent must be determined from the statute as a whole, as well as enactments relating to the same subject.") (internal citation and quotes omitted); *Seeba,* 2006 SD 7, ¶12, 709 NW2d at 830) (noting that "[t]his Court gives 'words their plain meaning and effect, and read[s] statutes as a whole, *as well as enactments relating to the same subject"*) (citations omitted) (emphasis added). Indeed, the public indecency and indecent exposure statutes prohibit the same types of obscene public exposure and were enacted and amended by the same Legislature, at the same time, and in the same bills. *See* 1998 SD Sess Laws ch 136, §§ 2 and 3; 2005 SD Sess Laws ch 120, §§ 298 and 299. *See also Plenty Horse,* 2007 SD 114, ¶6 n1, 741 NW2d at 765 n1 (recognizing that "[i]n 1998, the Legislature repealed a previous version of the statute and enacted two statutes in replacement"). Although the indecent exposure

statute involving a child was not enacted until 2002, it shares common phraseology with the other two.

[¶36.]     Each statute's exclusivity becomes clear when the statutes are construed *in pari materia*. All three contain similar wording but contain different requirements for who must be present in the public place when the exposure occurs. The mens rea element of each statute exemplifies this distinction. The indecent exposure statute requires the intentional exposing of ones genitals, "under circumstances in which that person *knows* that person's conduct is likely to annoy, offend or alarm *another person*." SDCL 22-24-1.2 (emphasis added). Similarly, the indecent exposure involving a child requires the intentional exposing of ones genitals "under circumstances in which that person knows that his or her conduct is likely to annoy, offend, or alarm *some child, thirteen years of age or younger*." SDCL 22-24-1.3 (emphasis added). Comparatively, the public indecency statute merely requires the perpetrator "know" his conduct -- which is likely to offend, annoy or alarm -- occurs in a public place where "another *may* be present." SDCL 22-1-1.1 (emphasis added). It appears that the legislature intended that the presence of a victim be a factor in these crimes.

[¶37.]     Prior to the legislature's adoption of the current criminal exposure scheme, there was only one statute that defined criminal exposure and it required the presence of a victim.[8] SDCL 22-24-1, *repealed by* 1998 SD Sess Laws ch 136, §

---

8.     SDCL 22-24-1 (1997) provided:

>      Any person who intentionally and with an immoral purpose
>      exposes his or her genitalia in any place where there is present
>      any person, other than the spouse of the exposer, to be offended

(continued . . .)

1.  That statute was repealed and reenacted as two distinct crimes, public indecency and indecent exposure.[9]  1998 SD Sess Laws ch 136, §§ 2 and 3.  A third statute, indecent exposure involving a child, was later added to the criminal exposure scheme.[10]  2002 SD Sess Laws ch 111, § 1.  When the legislature split up the crimes,

--------------------

(. . . continued)

> or annoyed thereby, is guilty of a Class 1 misdemeanor. However, if such person has been previously convicted of a felony violation of § 22-22-1, 22-22-19.1, or 22-22-23, that person is guilty of a Class 6 felony.  Any person convicted of a third or subsequent violation of this section is guilty of a Class 6 felony.

9.  SDCL 22-24-1.1 (1998) (public indecency) provided:
> A person commits the crime of public indecency if the person, with an immoral purpose exposes his or her anus or genitals in a public place where another may be present who will be offended or alarmed by the person's act.  A violation of this section is a Class 2 misdemeanor.

SDCL 22-24-1.2 (1998) (indecent exposure) provided:
> A person commits the crime of indecent exposure if, with the intent to arouse or gratify the sexual desire of any person, the person exposes his or her genitals in a public place under circumstances in which that person knows that person's conduct is likely to annoy, offend or alarm another person.  A violation of this section is a Class 1 misdemeanor. . . .

10.  SDCL 22-24-1.3 (2002) (indecent exposure involving a child) provided:
> If any person, eighteen years of age or older, exposes his or her genitals in a public place under circumstances in which that person knows that his or her conduct is likely to annoy, offend, or alarm some other person, and that conduct is viewed by and does, in fact, annoy, offend, or alarm any child, thirteen years of age or younger, that person is guilty of the crime of aggravated indecent exposure.  Aggravated indecent exposure is a Class 1 misdemeanor.  A second or subsequent conviction for aggravated indecent exposure is a Class 6 felony.

Interestingly, the penalty for actually exposing one's genitals in a public place to a child who was "in fact" annoyed, offended or alarmed evoked the exact penalty as the charged indecent exposure statute.  *Compare* SDCL 22-24-1.3 (2005) (indecent exposure involving a child) (penalty of Class 1 misdemeanor with second offense raised to Class 6

(continued . . .)

it expressly excluded the necessity for the presence of a victim for public indecency by adding the language: "where another *may* be present." SDCL 22-24-1.1 (1998) (emphasis added). In 2005, the legislature amended the public indecency statute adding the exact language already used in both the indecent exposure statute and the indecent exposure involving a child statute: "under circumstances in which that person knows that his or her conduct is likely to annoy, offend, or alarm."[11] 2005 SD Sess Laws ch 120, § 128; *see also* 2005 SD Sess Laws ch 120, § 147 (providing that "[t]he provisions of this Act are effective on July 1, 2006"). Because the public indecency statute already contained language expressly abolishing the necessity for the presence of a victim, the only purpose for the amendment was to define the

---

(. . . continued)
      felony) *with* SDCL 22-24-1.2 (2005) (penalty of Class 1 misdemeanor with second offense raised to Class 6 felony). The current version of SDCL 22-24-1.3 (indecent exposure involving a child) provides as follows:

> If any person, eighteen years of age or older, with the intent to arouse or gratify the sexual desire of any person, exposes his or her genitals under circumstances in which that person knows that his or her conduct is likely to annoy, offend, or alarm some child, thirteen years of age or younger, that person is guilty of the crime of indecent exposure involving a child. Indecent exposure involving a child is a Class 6 felony. A second or subsequent conviction for indecent exposure involving a child is a Class 5 felony.

11.    SDCL 22-24-1.1 currently provides:

> A person commits the crime of public indecency if the person, *under circumstances in which that person knows that his or her conduct is likely to annoy, offend, or alarm* some other person, exposes his or her anus or genitals in a public place *where another may be present* who will be annoyed, offended, or alarmed by the person's act. A violation of this section is a Class 2 misdemeanor.

    (Emphasis added).

prohibited *conduct*. If we were to interpret the shared provision as an elimination of the requirement that a victim be present, as the Court prescribes above, the previous and current wording "where another may be present" becomes useless and superfluous. We must presume that the legislature does not exert the effort to amend statutes with redundant and meaningless language. *See* Brim v. South Dakota Bd. of Pardons & Paroles, 1997 SD 48, ¶43, 563 NW2d 812, 822 (citation omitted) (stating "This court will not construe a statute in a way that renders parts to be duplicative and surplusage") (citing Sutherland Statutory Construction § 22.30 (5th ed 1993) ("[I]t is presumed that the provisions added by amendment were not included in the original act.")).

[¶38.]     Moreover, consideration of the indecent exposure statute involving a child further emphasizes the fact that the shared phrase defines the "conduct" rather than the probability that a victim be present. The initial version of that statute provided as follows: "If any person, eighteen years of age or older, exposes his or her genitals in a public place *under circumstances in which that person knows that his or her conduct is likely to annoy, offend, or alarm some other person*, and *that conduct is viewed by and does, in fact, annoy, offend, or alarm any child*, . . . that person is guilty." SDCL 22-24-1.3 (2005). Again, if we were to interpret the shared provision as an elimination of the requirement that a victim be present, as the majority prescribes above, the subsequent language *requiring* the presence of a child victim would be awkward and absolutely contrary to the Court's interpretation of the shared phrase. *See id.; see also Seeba,* 2006 SD 7, ¶64, 709 NW2d at 841 (citation and internal quotes omitted) ("[w]here statutes appear to conflict, it is

our responsibility to give reasonable construction to both, and if possible, to give effect to all provisions under consideration, construing them together to make them harmonious and workable."). The shared phrase defines the criminalized conduct; therefore, because the legislature chose not to use the language "where another may be present" when defining indecent exposure, the logical conclusion is that the presence of a victim remains a required element of the crime.

[¶39.] Finally, at the trial, Detective Duntman testified that from the location of the prohibited conduct he observed two occupied vehicles one that could be seen "plain as day" and another individual in a van who was "observing what was going on." Based on this testimony, the jury could have rationally inferred that the present individuals, who occupied the vehicles, unwillingly witnessed the sex act without consenting to the same. Therefore, the necessity to demonstrate the presence of a victim was satisfied. Although the majority claims that the detectives met the statutory requirement of the presence of victims, the State did not make this claim at trial or to this Court. In fact, the State emphasized that the victims were the unwilling, unknowing public – not the police officers. The State made the following argument to the jury:

> [T]here is no evidence that there is a sign outside of Elmwood Park that says warning, sex may be occurring, if you don't want to see it, please, leave. . . . There were actually people in the parking lot. They're trying to change that to well, there were people in the parking lot, but this is the sex park, and so if you go to this park, you've got to expect it, just like if you go to a strip club. Well, you know what, if you're in law enforcement, maybe you have that information, if you're a prosecutor, maybe you have that information, but if you're a member of the community, again, no sign or indication that that's what may be occurring.

#24581

I would affirm the verdict solely on the basis of the testimony regarding the other witnesses being present.